# CLAY & Another *v.* FREEMAN & Another.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF MISSISSIPPI.

Submitted January 12, 1886.—Decided April 26, 1886.

The surviving partner of a partnership after payment of the partnership debts, may retain the partnership property until the indebtedness of the firm to him is paid, if no proceedings are taken against him to enforce a settlement: in such case if the statute of limitations runs against anybody, it is against the representatives of the deceased partner.

A and B became partners in 1855 for the purpose of carrying on a plantation in Mississippi owned by them jointly as partners. B furnished the larger part of the capital, and received the firm's notes for the amount advanced by him in excess of A's advances. A died in 1859, and his administrator and B carried on the partnership business until the outbreak of the war, without a settlement. In July, 1867, B died, having been for some time administrator of A (but without receiving any property or filing any account), and leaving surviving his sole heir and daughter P, who became of age in November, 1869. On the death of B, C was appointed administrator of each estate, and obtained a decree of court for sale of the real estate. It was struck off at the sale to P in December, 1869; the amount of the purchase money was credited on the partnership notes ; and P entered into possession; but the whole proceeding subsequently proved to be illegal and invalid, and the supposed sale and transfer to be void. In 1876 dower in the estate was allotted to the widow of A in a proceeding in which P contested her right to it. In 1880 the widow began suit, which is still pending, to recover damages for dower, and about the same time the heir at law of A, having come of age, sued to recover an undivided half interest in the real estate, claiming that the partnership debts were outlawed. P then brought this bill in equity to settle the partnership business, and to charge all the real estate, including the undivided interest of the heir at law of A therein, and the interest of the widow, with the partnership debts. *Held:* That the statute of limitations could not be set up by the heir at law of A or by the widow against P; that P was the proper party to bring the suit ; that the cancellation of the sale restored P to her rights as partnership creditor; and that while the court would not set aside the assignment of dower, no further exaction for detention would be enforced.

In equity. The case is stated in the opinion of the court.

*Mr. William L. Nugent* for appellants.

*Mr. Frank Johnston* and *Mr. J. E. McKeighan* for appel-·lees.

MR. JUSTICE BRADLEY delivered the opinion of the court.

This case was commenced by bill in equity filed in the court below in July, 1882, by Pattie A. Clay and Brutus J. Clay, her husband, citizens of the State of Kentucky, against Lucy C. Freeman and C. L. Freeman, her husband, and David I. Field, citizens of the State of Missouri. As the bill was dismissed on demurrer, and the appeal is from the decree of dismissal, it is necessary to state its principal allegations. The facts alleged are substantially as follows :

In 1855 Christopher I. Field, (of whom the complainant, Pattie A. Clay, is only child and heir-at-law,) and his brother, David I. Field, (of whom the defendant, Lucy C. Freeman, is the widow, and the defendant, David I. Field, is only child and heir-at-law,) jointly purchased a plantation in Bolivar County, Mississippi, called the Content place, for the purpose of carrying it on in partnership, under an agreement by which said David was to possess, manage, and control the partnership property for the firm, and the partners were to be equally interested in the ·property and business. They were also equally to bear losses and expenses, and to share equally the profits realized; but Christopher, being a man of large wealth, did not have the same necessity for calling upon the firm prof-·its as David did. The style of the partnership, as advertised by the partners, was David I. Field & Co., or D. I. Field & Co. The plantation and its equipment of slaves and implements cost from $60,000 to $70,000, the lands alone costing about $54,000. Of this capital Christopher advanced $15,541.26 more than David, which advance was made in the years 1856, 1857, 1858, and 1859, and four partnership notes were executed by David and delivered to Christopher as evidence of these advances, which notes were as follows, namely :

1. "$7385$\frac{31}{100}$. On or before the first day of January, 1858, the concern of David I. Field & Co. will be owing C. I. Field the sum of seven thousand three hundred and eighty five $\frac{31}{100}$

dollars for money advanced the concern for payment for the Leach land and cash advanced for the purchase of negroes in K'y in the summer of 1856, and to bear six per cent. interest from maturity, or when due. This 23d Dec'r., 1856.

"D. I. FIELD & Co. [SEAL.]"

2. "The concern of David I. Field & Co. is owing to C. I. Field the sum of five thousand six hundred and sixty-six and two-thirds dollars (it being that amount advanced by him of payment to Kirk, balance on concern note due him 1st day of January last); he is to be paid six per cent. for said amount from date until paid. This 20th March, 1857.

"DAVID I. FIELD & Co."

[On this note is endorsed a credit as follows:

"$243.50. Rec'd on the within note the sum of two hundred and forty-three $\frac{50}{100}$ dollars on settlement of articles purchased at D. I. Field's sale of personal property by C. I. Field and D. I. Field & Co., this 1st day January 1861.

"C. I. FIELD."]

3. "Due C. I. Field, or order, the sum of eleven hundred dollars ($1100), it being money this day advanced by paying to Wm. Kirk, through his draft on Hewitt, Norton & Co., of New Orleans, this fifth day of June, 1858.

"D. I. FIELD & Co. [SEAL.]"

4.                                     "BOLIVAR, *June 13th*, 1859.
"Due C. I. Field, or order, one thousand three hundred and eighty-nine dollars $\frac{29}{100}$, for value rec'd, on settlement to this date (to this date).

"D. I. FIELD & Co."

David I. Field (whom for the sake of brevity we will call D. I. Field) conducted the plantation, and lived on it until his death, which took place on the 11th of September, 1859; and from that time until the commencement of the late war, it was

conducted by his administrator, one E. H. Field. His widow, Lucy, the now defendant, soon after his death, removed to Lexington, Kentucky, with her infant son, David I. Field, junior, one of the defendants in this suit; and after her marriage with her present husband, C. S. Freeman, she removed to Missouri to reside with him, and neither she, nor her son, has ever lived in Mississippi since. At the time of his death, D. I. Field owed individually (including his half of the firm debt due to his brother, C. I. Field), $11,000 or $12,000, all of which debts, and all the firm debts except the debt due to C. I. Field, were paid. On the 12th of December, 1859, C. I. Field probated and registered his claim against the estate of D. I. Field, and to the proof thereof annexed the following memorandum, to wit:

"David I. Field & Co. is a firm consisting of the estate of David I. Field and C. I. Field, partners in the Kirk plantation, known as the Content place. All the within notes are joint notes of the firm to C. I. Field, consequently one-half of the within claim is chargeable to the estate of D. I. Field. This the 10th Dec'r, 1859.        (Signed)        C. I. FIELD."

Nothing was realized from the plantation during the years 1859, 1860, and 1861, more than sufficient to keep it up. In 1859 there was a bad overflow of the river; in 1860 there was barely sufficient for expenses, and the crop of 1861 was destroyed by the Confederate soldiers under military orders.

Christopher I. Field then took the slaves (about thirty in number) to Texas to prevent their being dispersed, and after the war was ended, brought them back, and endeavored to work the plantation again; but as few of the slaves, after obtaining their freedom, were willing to remain on it, very little could be done, and the place was worked at a loss. Christopher I. Field died on the 18th of July, 1867, leaving his daughter Pattie, the complainant, his sole heir-at-law, who came of full age on the 22d of November, 1869. A few months before his death he was appointed administrator *de bonis non* of his brother David, but nothing came to his hands as such administrator, and he filed no account. After his death, Brutus J. Clay, senior, (father of Brutus, one of the complainants,) was appointed administrator, both of the estate of Christopher and

of his brother David, and assumed the management of the plantation; but by reason of dilapidation, growth of brush, and overflows of the river, realized nothing beyond taxes and expenses as long as he had the charge.

On the 2d of November, 1868, Brutus J. Clay, senior, as administrator of David I. Field, presented a petition to the probate court of Bolivar County, Mississippi, representing the estate of said David to be insolvent, and praying for an order to sell his property, real and personal, for the payment of his debts. Schedules were annexed to the petition, showing that there was no personal property, that the only real estate was the said David's half interest in the plantation of Content, and that his debts consisted of one-half of the notes given to Christopher as before mentioned. The petition stated that David's widow, Lucy, and his only child and heir, David, jr., and his guardian, one Scott, resided in Lexington, Kentucky, and prayed an order of publication citing all parties interested to appear, &c. Upon this petition and the proceedings had in pursuance thereof, a decree was made by the probate court in March, 1869, declaring that the estate was insolvent, and authorizing and directing the administrator to sell the lands described in the petition. In pursuance of this decree and advertisement, duly published, D. I. Field's one-half interest in the plantation was sold at public auction on the 20th day of December, 1869, and struck off to the complainant, then Pattie A. Field, by her attorney, for the sum of $6000. The complainant gave her a receipt for the amount of purchase money, less the costs, which was credited on the notes by the administrator, and she received a deed for the property purchased, and went into possession, and has remained in possession, by herself and her husband, or her tenants, ever since that time, except as to the dower of the defendant, Lucy C. Freeman, hereafter mentioned. The sale was made in good faith and in the belief that it was valid. On the 1st day of December, 1869, shortly before the sale took place, a new constitution of Mississippi went into operation, which abolished the probate court and established a chancery court for each county, having, amongst other things, the former jurisdiction of the probate court; and, by a law passed the 4th

of May, 1870, it was enacted that all causes and proceedings remaining undisposed of in the court of probate of each county should be transferred to the chancery court. The proceedings in this case were not formally transferred, but are actually on file in the clerk's office of the chancery court for Bolivar County aforesaid.

The bill then states the results of the working of the plantation from 1870 to the time of the filing of the bill, showing that no profits were realized, but that the complainant incurred a loss of from $2500 to $3000, in consequence of the dilapidations consequent upon the war, severe overflowing of the river, and other causes for which the complainant was not responsible. Vouchers are exhibited with the bill for taxes, expenses, and repairs by her paid and incurred.

In 1873 Lucy C. Freeman (then Lucy C. Field) filed a petition in the chancery court of Bolivar County for her dower in one undivided half of the Content plantation, and in 1875, a decree for allotment of dower was made, which decree was affirmed by the Supreme Court of the State in 1876, so far as said Lucy's legal right to dower was concerned. The complainant and Brutus J. Clay, senior, by way of defence to the suit, set up the partnership, the indebtedness to Christopher I. Field, the fact that the plantation was partnership property, and liable for the partnership debts before any dower could be had therein, and also set up the sale of David I. Field's interest by order of the orphans' court. But this defence was overruled as not a good defence at law. The Supreme Court in affirming the decree, however, declared that the right of C. I. Field's estate arising out of the partnership and the partnership debts was not affected by the proceedings in dower, and that the defendants, or tenants, in that suit, were left free to litigate the same with the said Lucy. Her dower was thereupon set off to her in November, 1879, and complainants hoped she would be therewith content, and did not further resist her taking possession of her dower. But in September, 1880, she filed a bill for damages in dower, which is now pending in the Circuit Court of the United States for the Northern District of Mississippi.

On the 27th of November, 1880, David I. Field, junior, who had then come of age, commenced an action of ejectment in the said Circuit Court for an undivided half of said plantation as heir of his father, David I. Field, senior, and demanded $20,000 for mesne profits. The complainant filed a plea, and the suit was still pending at the time of filing the bill in this case.

The bill states that shortly after the sale made on the 20th of December, 1869, Brutus J. Clay, senior, made his final settlement as administrator of the estates of David I. Field and Christopher I. Field, in the chancery court of Bolivar County aforesaid, and was discharged; and that there has since been no administrator of either of said estates: E. H. Field also settled his accounts as administrator of David I. Field's estate and was discharged: All of the personal property of the partnership of David I. Field & Co. was lost or destroyed without any negligence of Christopher I. Field, surviving partner, as the result of the war, at the end of which the only property of the partnership left was the Content plantation: That no part of the partnership notes given to Christopher as aforesaid has ever been paid: The complainant insists that this debt is a charge on the property prior to any claim of the widow, Lucy, or of the heir David I. Field, junior: D. I. Field's estate is insolvent, the one-half of said lands being now insufficient to pay said notes and the interest thereon: C. I. Field, at the time of his death, owed nothing, or if anything, all his debts are paid off and discharged: All the partnership debts, except the said debt due to the estate of C. I. Field, have been paid off and discharged: The complainant, Pattie A. Clay, now holds said debt as his sole heir-at-law and distributee.

The prayer is, that an account of the partnership may be taken, and that the assets may be marshalled, and the said debt paid out of the assets of the partnership, including said plantation—the complainant proffering an account of all moneys received therefrom, and claiming credit for all taxes, expenses and repairs. The prayer then proceeds as follows: " or if this honorable court should adjudge and determine that the said proceedings in the probate court of said county of Bolivar con-

stitute an election binding upon her, and that they estop her from proceeding otherwise than as against the undivided half interest of said David I. Field, deceased, in said plantation for the half of said partnership debts due to her ancestor, your orators in that event pray that after the amount due her as such heir-at-law and distributee upon such accounting shall be ascertained and fixed, the said undivided half interest of said David I. Field in said plantation shall be sold under the proper decree of this court, thus carrying into execution the decree of said probate court of Bolivar County, rendered in the matter of the administration of the estate of said David I. Field, deceased; but if this honorable court should adjudge and determine that your orators are not entitled to either of the special reliefs hereinbefore prayed, they then pray that this honorable court may decree that your orators have a lien upon the said undivided half interest of said David I. Field, deceased, in said plantation for the said sum of six thousand dollars, and the interest thereon from the 20th day of December, 1869, lessened by any balance that may be found due by her upon such accounting to be had in the cause as may be adjudged to be fair and equitable; and if it be determined that your oratrix has lost her right to proceed against said plantation, as assets of said partnership for the payment of said partnership debts to her said ancestor, they pray that an accounting may be had between them and the said Lucy C. Freeman, in connection with her claim as propounded in and by her bill of complaint, upon such principles and in such manner as this honorable court shall adjudge to be fair and equitable; or, if mistaken in the relief sought, then for such other, further and general relief and decree as to equity belongs and your orators can require. In the meantime your orators, hereby confessing they are without valid title to the undivided half interest of said David I. Field in said plantation, but claiming and insisting that in no event can they be held to account to said defendants in two separate proceedings concerning the rents of said plantation, and that the whole controversy between them and said defendants, their agents and attorneys, be enjoined, inhibited, and restrained from further prosecuting their said

suits in this honorable court against your orators, and on final hearing that said injunction be perpetuated."

This bill was dismissed by the court below as upon demurrer. Other proceedings were had; but, in view of the course which was finally taken in the cause, it is not necessary to notice them. The ground on which the bill was dismissed was lapse of time. The sale of David I. Field's interest by order of the Probate Court in 1869 was held to be void. This was also so held in the action of ejectment brought by David I. Field, junior, the reason assigned being that the Probate Court had no jurisdiction of accounts between partners, and that the administrator gave no bond as required by law. On writ of error from this court in that case the judgment of the Circuit Court was affirmed. See *Clay & Wife* v. *Field*, 115 U. S. 260. But that action affected only the legal title; and the question still remains, unless precluded by lapse of time, whether in equity, the lands, being partnership property, are not liable to the debts of the partnership prior to any claim of the widow and heir of D. I. Field.

As before said, the court below placed its decree upon the lapse of time, holding that, as the partnership was dissolved by the death of David I. Field, senior, in September, 1859, a suit for an account of the partnership transactions could not be brought in 1882, after a lapse of twenty-three years; or, deducting five years for the continuance of the war, after a lapse of eighteen years.

If this were simply a bill to enforce the settlement of an account this reasoning would be very apposite. But it is not. It is a bill to prevent a dispossession of property until the equitable charges against that property are adjusted and settled. Of course the adjustment and settlement of those charges involves an account of the partnership transactions. But that account was no less claimable, at any time, by the estate of D. I. Field than it was by that of C. I. Field. The primary object of the present bill, though it involves a taking of the account, is to prevent the complainants from being dispossessed of the property until their claim against it has been discharged.

If a pledgee holds property as security for a debt, the statute of limitations does not affect his right to hold the pledge until the debt is paid; it does not authorize the debtor to claim the pledge without paying the debt. The creditor is in possession. If the statute runs against any one, (so far as relates to the pledge,) it runs against the pledgor. The creditor, by operation of the statute, may lose his right of action for a personal judgment against the debtor; but he has a right to hold on to the pledge until the debt is paid. It is the debtor's concern to see that he does not lose his right to redeem the pledge.

So, a mortgagee in possession, if satisfied with the mortgage security, need have no anxiety about the statute of limitations. That is the concern of the mortgagor. Unless he redeems in proper time, he will lose his equity of redemption.

The same rule applies in the case of partnership property in the possession of the surviving partner; he has a right to hold it until the debts of the firm are paid, and if the firm is indebted to him, he has a right to hold it until he is paid. It is true, it is his duty to dispose of the partnership property, and settle the partnership debts. But that is a duty to which he may, at any time, be compelled by the representatives of the deceased partner; and although his neglect or delay in winding up the concern may expose him to the animadversion of the court, and to the vigorous exercise of its power to compel him to do his duty, it will not relieve the partnership assets in his hands from the lien of the partnership debts. Being in possession of those assets, he is not affected by the statute of limitations. If the statute runs against anybody, it runs against the representatives of the deceased partner in relation to their right to call him to account. The proposition that the partnership property can be taken out of the surviving partner's hands, and distributed among the several partners and their representatives without a settlement and payment of the partnership debts, including any balance due the surviving partner himself, is a proposition that equity will not for a moment entertain.

The other side, it is true, have prevailed at law; but they cannot prevail in equity. It would be strange, indeed,

if the principal capitalist of the firm, who advanced much the largest amount of money in the concern, should be brought in debt to his co-partner. The thing is unreasonable on its face; and it cannot stand the test of a juridical examination.

The reason why the matter lay so long without any movement being made on either side, (except that of Lucy C. Freeman for her dower,) is probably this: On the side of C. I. Field and his representatives it was supposed that the decree of the Probate Court declaring the insolvency of D. I. Field and ordering a sale of his property to pay his debts, and the sale made in pursuance thereof, ended all further inquiry or controversy. On the side of D. I. Field's family, it is probable that the same idea prevailed; or, if not, that the land was not supposed equal in value to the lien upon it. The infancy of D. I. Field, jr., would hardly have deterred his mother and guardian from prosecuting his interest if they had thought it worth prosecuting. The idea that David junior could get the land without paying the debt on account of lapse of time is probably of recent growth.

But whatever the reasons for inaction may have been, C. I. Field and his representatives and heir-at-law have always, since the war, remained in possession, and the heir cannot, in equity, be ousted of that possession without a settlement of the accounts. It is very doubtful, indeed, whether without this possession, even a technical plea of the statute of limitations, or lapse of time analogous thereto, could be sustained. After the death of D. I. Field, his administrator, E. H. Field, and C. I. Field, by mutual consent, continued the partnership until the breaking out of the war. Of course, neither party could have claimed that the statute was running during that period, under those circumstances. It did not run during the war. It did not commence to run, therefore, until April, 1866. C. I. Field died fifteen months afterwards, (in July, 1867,) and for several of those months he had been administrator of his brother's estate, no one being such for the remainder of the time. Of course, he could not sue himself. Then Brutus J. Clay, senior, was appointed administrator of both estates, and so far as appears, continued such, (except as discharged from active trust

on settlement of his accounts,) down to the period of his death, which occurred, as stated in the bill, in October, 1878, since which time there has been no personal representative of either estate. We do not see, therefore, how the statute of limitations, or lapse of time, can be set up against the complainant, Pattie A. Clay, the heir-at-law of C. I. Field.

That she is a proper party to bring this suit we think is very clear. She is the only person in the world interested in C. I. Field's real or personal estate. In the realty she is legally interested as heir-at-law; in the personalty she is the only beneficiary. If new letters of administration were to be taken out it would be for her benefit. There are no creditors; there are no debts due the estate except the one debt due from the partnership. The plantation is partnership property, standing in the joint names of the partners, but liable for the partnership debts. C. I. Field and his administrator held it in possession subject to the lien of those debts. She, as their successor, and the only person beneficially interested, still holds that possession. We think it would be highly inequitable to deprive her of that possession at the suit of the heir of D. I. Field, the debtor, without payment of the debt under the lien of which she holds it, or, at least, without bringing the debt into account against the property itself and any rents and profits which she and her predecessors in interest may have realized therefrom. Her position is really one of defence. She has possession, and an attempt is made, under a technically legal title, to deprive her of that possession; whilst that legal title is a merely formal one, since, as before said, the lands are partnership property, and assets, in equity, subject to the partnership debts; and her possession as sole successor in interest to her father cannot be disturbed without doing equity to her, by allowing her to bring the notes, with interest, (now belonging to her,) into account against those assets. The sale made by order of the probate court having been adjudged void, its incidents and consequences are void—such as the receipt given for the balance of the $6000 purchase money, and the endorsement thereof on the notes. The latter will stand for their full amount, with interest, less the endorsement of $243.50 made by C. I. Field.

It results from these views that the lien for partnership debts takes precedence, not only of the interest of David I. Field, junior, as heir-at-law of D. I. Field, but of Lucy C. Freeman's right of dower. As, however, dower was actually assigned to her nearly three years before the filing of the present bill, such assignment should not now be disturbed; but no further exaction for detention of dower should be enforced. We think, therefore, that, upon the allegations of the bill, the complainants are entitled to relief, and that the demurrers should have been overruled.

The decree of the Circuit Court is

*Reversed, and the cause remanded, with instructions to over-rule the demurrers, and to proceed in the cause according to law and the principles announced in this opinion.*