## LENOW v. FONES.

1. DOWER: *In partnership real property.*
   Upon the death of a member of a partnership his widow will take her dower in the surplus of the real estate of the partnership which remains after paying the partnership debts, for life, as in real estate, and not absolutely, as in personal property, unless there was an agreement between the partners for a conversion and sale of the lands after the partnership affairs should be settled, and a distribution of the proceeds. In that case she would take dower absolutely as in personalty.

2. SAME: *In leasehold property.*
   A lease of whatever duration is but a chattel interest, and upon the death of the leaseholder his widow will take dower in it absolutely, as in personal property, and not for life, as in real estate.

APPEAL from *Pulaski* Chancery Court.

Hon. D. W. CARROLL, Chancellor.

*U. M. & G. B. Rose,* for appellants.

*First*—Lands bought with partnership funds and for partnership purposes are to be regarded as personalty under the law of descents. *2 Lindley on Part., 668; 28 Ark., 256; Parsons on Part., \*p. 370; 7 Conn., 19; 10 Leigh, 422; 3 Brown Chy., 199; 7 Vesey, 453, n.; 7 Sim., 271; 15 Johns., 159; 4 Ohio St., 1; Walk. Chy., 200; 9 Ind., 16; 211 Penn. St., 257; 13 ib., 550; 1 Sumner, 174; 20 Mo., 184; 19 ib., 56; 2 Sand. Chy., 366; 6 Bush., 370.*

*Second*—A leasehold estate in lands is personal property. *2 Kent Com., 342; 2 Black. Com., 312; Mansf. Dig., sec. 2540; 8 Paige, 598; 11 ib., 569; 13 N. Y., 159.*

*Dodge & Johnson,* for appellees.

*That as to creditors, the real estate purchased with partner-*

*ship funds remains as if it was personalty. But that as between the personal representatives and heirs at law of the deceased partners it is to be considered and treated as real estate, and to be distributed accordingly, as provided under the laws of the state.* See *1 Scribner on Dower, p. 536; ib., 547, sec. 21; 1 Wash. on R. P., p. 158, sec. 12; Mansf. Dig., sec. 647; 31 Ark., 580; 15 Fet., 21; Tiedeman on Real Prop., sec. 246; Parsons on Part., p. 383; ib., 386, notes, and 387; Tyler on Inf. and Cov., p. 557; ib., 559; 2 Edw. Chy., 28–32; 3 ib., 428; 7 Serg. & R., 438; Collyer on Part., 5th Ed., sec. 133; 2 Barb. Chy., 199; 74 Pa. St., 395; 80 ib., 50; 2 Sand. Chy., 368; 2 Eden Ch., 30; 11 Barb., 745; 1 Md., Chy. Dec., 433; 5 Gill, 1; 3 How., 373; 7 How., 444; 36 Miss., 52; 6 Ind., 123; 53 Ind., 7; 16 B. Mon., 634; Story on Part., sec. 94, p. 145; 1 Am. Ld. Cases, 492; 5 Fla., 363; 4 R. I., 173, 207; 8 ib., 60; 1 Head., 97; 3 Hayw., 97; 6 Yerg., 21; 6 Minn., 371; 5 Metc., 582; 1 Am. Ld. Cases, 487, 498; 47 Ala., 125; 52 ib., 169; 63 Ill., 543; 86 ib., 287; 1 Ohio, 545; 4 Oh. St., 1; 8 Ohio Rep., 364; 20 Ohio St., 448; 29 ib., 23; 41 Iowa, 39; 30 N. J. Eq., 417; 20 ib., 294; 23 ib., 249; 44 Miss., 412; 4 Metc., 541; 10 Cush., 468; 98 Mass., 110 to 117.*

To sum up this argument, we find that appellate courts in twenty-eight states, whose decisions we have carefully examined, all hold that the partnership realty descends and is distributed to the heirs at law as realty, subject, however, alone to rights of the creditors of the co-partnership and the equities between the partners, and that the widow takes her dower out of said real estate as the law provides, and none other.

*Second*—Leasehold interests in land, under the laws of Arkansas, are real estate, and descend as such. *Sec. 2540, Mansf., Dig.; ib., secs. 645, 2522; Rap. & Law. Law Dic., p. 200; 1 Steph. Com., 280; Coke Lett., 1186; 1 Washb. Real*

*Prop., 463; Walker Am. Law, 279; 14 Wend., 38; 20 ib., 423; sec. 3002, Munsf. Dig.; ib., secs. 3956, 660, 3380.*

## STATEMENT.

The partnership of Fones Brothers was composed of three brothers doing a commercial business in the city of Little Rock. The younger brother died, leaving a widow and one child; a posthumous child was born after his death, and the first child died in infancy. The posthumous child still survives, and the widow has married J. H. Lenow. The surviving partners brought this suit for partition of the lands belonging to the firm, and for an accounting of rents. The lands include a valuable storehouse and warehouse in the city, used by the firm in carrying on their business as dealers in hardware; and also a leasehold interest for a term of twenty years in a lot and building adjoining the storehouse. These pieces of property were bought with partnership funds and for partnership purposes.

Mrs. Lenow, the widow of the deceased partner, filed her cross-bill, claiming that the storehouse, warehouse and leasehold interest were all partnership property, to be treated as personalty, and that she was entitled, as widow of her deceased husband, to one-third of his interest absolutely, as in personal property, for her dower, and to one-half the remainder as heir of her deceased child; leaving to her surviving child the one-third of the whole. The surviving infant, by guardian, answered the cross-bill, denying the claim of his mother, and asserting that the property could be treated as personalty only for payment of the debts of the partnership; that the debts were all paid, and the property was then held by the partners as

tenants in common, and was descendible as real, and not as personal estate.

The chancellor sustained the contention of the heir, and Mrs. Lenow appealed.

1. DOWER: In partnership realty.

COCKRILL, C. J. The first question presented by the record is, are lands bought with partnership funds for partnership purposes to be regarded as realty or personalty under the laws of descents and distribution? Or, to state the question with more particularity, shall Ella D. Lenow, as the widow of a late member of the firm of Fones Bros., the business of which has been closed and the debts paid, take her dower in the real estate assets of the firm remaining after the winding up of its affairs, absolutely, as in personal property, or for life, as in real estate?

The estate is valuable, and the solution of the question is important to Mrs. Lenow and the infant heir of her deceased husband, as the interest of one will be increased or diminished at the expense of the other.

The question is presented for determination to this court for the first time.

The doctrine which obtains wherever the English system of jurisprudence prevails that " equity converts real estate, held for partnership purposes, into personalty, so far as may be necessary to settle all the equities between the firm and its creditors, and between the partners themselves," was recognized, in the language quoted, by this court in the case of *Percifull and Wife v. Platt, 36 Ark., 456.* But the court have not, as we are aware, approached nearer the solution of the question. See, too, *Drewry v. Montgomery, 28 ib., 256; Jones, McDowell & Co. v. Fletcher, 42 ib., 422.*

This assumed conversion is an equitable fiction, devised for the accomplishment of equitable results and to carry into effect what is presumed to be the intention of the

partners themselves; for when they put land into a commercial firm it must be taken that they intend it to be considered or treated as personalty, since commerce concerns itself with personal property alone.

"If the partners mean to deal honestly," says Kent, "they cannot have any other intention than the appropriation of the investment, if wanted, to pay the partnership debts;" and so the law necessarily implies the agreement that the partnership lands shall be treated as other partnership stock. *3 Kent's Com.,* * *39, n.* (*b*).

When there is an agreement between the partners for an out and out conversion and sale of the lands after the partnership affairs are closed, and for a distribution of the proceeds, equity regards the lands as personal property, not only for partnership purposes, but for distribution as well, upon the principle that what the parties have directed to be done shall be taken as actually done. *Foster's Appeal, 74 Penn. St., 391; Lowe v. Lowe, 13 Bush., 688.*

The authorities are uniform upon these questions. But when the case goes further and is relieved, as this is, from any special agreement to affect the consideration of the question, and is left to stand alone upon the fact that lands are a part of the residue of the stock of a solvent defunct firm, the question whether they are distributable, like other partnership stock, as personalty, or converted into and descend as realty, is one upon which a great deal of learning and more discussion, with much conflict of opinion, have been expended.

The doctrine that is drawn from the conflicting cases in the English courts, seems to be that the partners having evinced the design to treat the lands as personalty by putting them into the partnership stock, the conversion into personalty is presumed to continue for all purposes unless the contrary intention is in some way shown; and while the legal title

36-48

upon the death of a partner will go in the ordinary course
of descent without survivorship, yet the equitable interest
will, after an ascertainment of its value by sale, be distrib-
utable, according to the supposed intention of the deceased
partner, as personal property.  *Collyer on Part.*, 76; *Gow.
Part.*, 256 *et seq.*; *3 Kent, supra; Randall v. Randall, 7 Sim.,
271; Bell v. Phyn, 7 Vesey, 453, and note; Thornton v. Dix-
on, 3 Brown Chy., 166, and note; Buchan. v. Sumner, 2
Barb. Chy., 199.*

American judges have entertained opposite opinions
upon this question, but the stronger tendency in this
country, and it seems to us more in keeping with the reason
of the thing, is to limit the doctrine of equitable con-
version strictly to the purposes which demand its operation.
The doctrine was invented for the convenience and accom-
modation of trade, and when that purpose is accomplished
in any given case, the reason for the rule fails and its ope-
ration ought naturally to cease.  This would seem more
nearly to attain the object the partners themselves aimed
at.  The basis of the principle of both classes of the con-
flicting cases is the presumed intention of the deceased
partner.  *Hoxie v. Carr, 1 Sumner, 173, 183; 1 Am. Lead.
Cases, sup.*  When men enter into an agreement of copart-
nership, or purchase land with partnership funds for part-
nership use, and omit from their articles of agreement or
their deed of conveyance, all mention of facts looking
to the creation of a trust to reach out beyond the end of
the commercial project they have in view, and which will
work a sale of the lands and convert them into cash after
the successful close of the joint enterprise, and alter the
rule of descent—to say that they had these results in con-
templation when they have not been alluded to and were
not necessary to the accomplishment of the purposes about
which they have contracted, is to push the doctrine of im-

plied intention to great length. But eminent judges have held to that view.

When the partnership is closed, the joint enterprise ended, and the equities of all parties concerned in it or interested in the joint stock worked out through the doctrine of conversion, why should not conversion cease, and the realty resume its natural character for those having no relation to the partnership? All partnership rights and obligations would thereby be secured, and "all equities growing out of that relation met and answered." "To require equitable interference to go further" (say the Massachusetts court in *Shearer v. Shearer*, *98 Mass.*, *107*), "and convert all real estate into personalty, for the mere purpose of a division, seems to us to be an unnecessary invasion of the rights of the copartners, and when undertaken in the interests of one class of the representatives of a deceased partner against another class of representatives of the same partner, it seems to be a departure from the legitimate sphere of equitable jurisdiction.

"It is not the province of equity to seek to counteract or modify the operation of the laws of descent and distribution."

According to the American cases, equitable conversion of real estate, in the absence of an agreement, goes no further than this. The mere circumstance that land is bought with joint funds for partnership use is not regarded as sufficient to convert it into personalty after the partnership is closed and its affairs settled. This proposition may be taken as clearly established by the cases, viz.: "As between the personal representatives and heirs at law of a deceased partner, his share of the surplus of the real estate of the copartnership, which remains after paying the debts of the copartnership, and adjusting all the equitable claims of the different members of the firm as between them-

selves, is considered and treated as real estate." *Buchan. v. Sumner, sup.; Foster's Appeal, sup.; Shearer v. Shearer, 98 Mass., 107; Wilcox v. Wilcox, 13 Allen, 254; Woolbridge v. Wilkins, 3 How. (Miss.), 873; Dilworth v. Mayfield, 36 Miss., 52; Scruggs v. Blair, 44 ib., 494; McGrath v. Sinclair, 55 ib., 89; Clay v. Freeman, 118 U. S., 97; Coles v. Coles, 1 Am. Lead. Cases, notes \*498; Uhlee v. Semple, 20 N. J. Eq., 294; Tillinghurst v. Chaplin, 4 R. I., 173; Campbell v. Campbell, 30 N. J. Eq., 415; Griffey v. Northcutt, 5 Heisk. (Tenn.), 746; Jones v. Shary, 9 ib., 660; Williamson v. Fontain, 7 J. Baxter, 212; Hewitt v. Rankin, 41 Iowa, 39; Bopp v. Fox, 63 Ill., 540; Simpson v. Leach, 86 ib., 286; Galbreath v. Gedge, 16 B. Mon., 631; Lowe v. Lowe, 13 Bush., sup.; Sherly v. Thomason's Exr., 1 S. W. Rep. (Ky.), 530, and note; in re Codding & Russell, 9 Fed. Rep., 849 and, note; Logan v. Greenlaw, 25 ib., 299; Loubat v. Norris, 5 Fla., 363; 1 Wash. Real Prop., \*159, 423; 1 Scrib. Dower, chap. 26, p. 563; Parsons on Part., p. 383.*

What is said by the court in *Shearer v. Shearer, sup.,* is applicable to the facts in this case upon the further consideration of conversion for the assignment of dower.

"The widow's right of dower in her husband's interest in partnership real estate is not held subject to the payment of his private debts. As a general fact this incident makes dower a more valuable interest than the distributive share of the widow would be if the real estate were to be converted. But we do not regard that circumstance as of any weight in determining the general rule against such conversion. On the other hand, in our view, the special facts which, in the present case, would make it more advantageous for the widow that the partnership realty should be converted into personal estate, furnish no ground for such conversion." " There are no equities between heirs and distributees, under our laws, which can

call into exercise or quicken the powers of the court for the conversion of realty into personalty. We do not understand that, in the English courts any such supposed equities have ever been made a ground for the doctrine of equitable conversion, as held there. In the case of *Cookson v. Cookson, 8 Sim., 529*, such a ground of interference was emphatically discarded. That case, however, is not one in which the full extent of the English doctrine was asserted."

As the trusts of the partnership of Fones Brothers have been discharged, equity no longer has occasion to make use of the machinery of trusts and through it to deal with the lands as personalty, but will leave them to be governed by the laws applicable to realty. Mrs. Lenow, the widow of the deceased partner, must therefore take her dower in his share of the residue of the real estate of the firm, as in other lands of which he was seized.

There was no error in the decree in this respect.

2. The remaining question concerns the leasehold interest in block 77, which was also a part of the firm's assets.

2. Dower in partnership leasehold property.

The guardian of the minor contends that under the statutes of Arkansas this leasehold interest must be taken and considered as *real estate*, and that as such it has, by the death of the father, A. T. Fones, descended and vested absolutely in the child, subject alone to Mrs. Lenow's dower.

The chancellor adopted this view and decreed that dower should be assigned in this interest as in land. Mrs. Lenow contends that the interest is personal property, and that she is entitled to two-thirds of her deceased husband's share of it absolutely—a third as dower in personalty, and one-half of the residue as next of kin of her deceased child. *Loftin v. Glass, 15 Ark., 680.*

" No proposition has been better settled, from the earliest

days of the common law, than that a lease, of whatever duration, is but a chattel." *Murdoch v. Ratcliffie, 7 Ohio, 119; 1 Taylor Land & Ten., sec. 14, n.; 2 Black. Com., 312; 2 Kent Com., 342.*

It was at common law regarded within the definition of personal things, and although it was denominated a chattel real to distinguish it from mere movables, it was not, when speaking with legal accuracy, considered as real estate. It was not an estate of inheritance; but, like other chattels, went to the executor or administrator, and not to the heir. It was not, therefore, the subject of dower.

"So strict was the law in this respect that an estate for two thousand years, no matter in what form or by what instrument created, would not confer dower upon the widow of the lessee." *1 Scribner on Dower, 363; Park Dower, 47–8.*

Our statute, however, confers the right of dower in personal property (*Mansf. Dig., sec. 2591*), and it is conceded here that if the estate for years is not realty by virtue of the statute, Mrs. Lenow should take the full two-thirds interest, as claimed, absolutely.

Section 2540, Mansfield's Digest, in the chapter regulating "Descents and distributions," declares that "the term 'real estate,' as used in this act, shall be construed to include every estate, interest and right, legal and equitable, in lands, tenements and hereditaments, except such as are determined or extinguished by the death of the intestate seized or possessed thereof in any manner other than by lease for years and estate for the life for another person."

From this definition of real estate a "lease for years" is expressly excepted. The exception is awkwardly framed, and why the clause "except such as are determined or extinguished by the death of the intestate seized or possessed thereof in any manner" should have been re-

quired at all, is difficult to perceive. The estate of the heir is but a continuation of that of the ancestor, and if the estate is determined with the life of the ancestor, there can be nothing for the heir to take. If these words are placed in parenthesis the relation of the clause "other than by lease for years " to the general definition given, is more apparent, though by no reading can it be taken in any light other than an exception.

We are referred by the counsel for the appellees to other provisions of the statute, where a chattel real comes within the definition of real estate as there used. (*Mansf. Dig.*, *secs. 645, 3002, 3956, 660.*) But these provisions merely direct the manner in which leasehold property shall be conveyed and the conveyance admitted to record; or regulate judgment liens thereon, and prescribe how it shall be subjected to levy and sale under execution. They do not undertake to fix and declare the nature of the estate for the purpose of descent or distribution. Section 2540, quoted above, does that, and leaves it as it was before the statute—personal property.

In the case of *Kinney v. Watts, 14 Wendell, 38*, the court applied the definition of real estate, as found in the statute governing the recording of conveyances, in a case where the nature of the estate was involved; but, on a subsequent examination of the question, the court of appeals said the construction in *Kinney v. Watts* had been reached through inadvertence, and ruled that the statute did not affect the nature of the estate. *The Mayor of N. Y. v. Babie, 13 N. Y., 151, 159–60.* See, too, *Tone v. Brace, 11 Paige, 566.*

The Ohio cases cited in *1 Scribner on Dower, pp. 365–7*, are in point, and sustain the position that the provisions relied on by the appellees were not intended to change the nature of the estate, and do not control the question now

Lenow v. Fones.

presented.    The leasehold interests retain then the character or incidents of personal property, as at common law, and the statutes which govern the right to distribution of and dower in other personal property are applicable to them.    The chancellor erred in treating them as real estate for the purposes of this controversy.    Otherwise the decree is right, and is affirmed.    As to the leasehold interests, it is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.