THOMPSON ET AL., ADMINISTRATORS, APPELLANTS, *v.* FLYNN, RESPONDENT.

(No. 7,114.)

(Submitted November 17, 1933. Decided December 8, 1933.)

[27 Pac. (2d) 505.]

486

*Messrs. Kanouse & Schmitz* and *Mr. George Y. Patten,* for Appellants, submitted a brief; *Mr. Fred W. Schmitz* argued the cause orally.

488

*Mr. E. H. Goodman* and *Mr. E. E. Lofgren,* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Mary Etta Thompson and Jefferson Sharp, as administrators with the will annexed of the estate of Anthony M. Sharp, deceased, have appealed from a judgment in favor of the defendant, Claude V. Flynn.

The action was instituted to establish the existence of a partnership between Anthony M. Sharp and Flynn and to compel an accounting, on the following facts: Anthony M. Sharp acquired certain lands in Broadwater county in the early days, and engaged in farming and livestock raising until the date of his death. He married early and raised four daughters, all of whom married and went to homes of their own prior to 1900. Sharp's wife died some time prior to 1888, and in that year he married Mary Flynn, a widow; Jefferson Sharp was born to them in 1890.

In 1890 this defendant, issue of her former marriage, came west to visit his mother and remained to assist Sharp on the ranch; later he received approximately $1,400 from his father's estate, which sum he loaned to the Sharps, who gave him a mortgage on the ranch as security. In 1897 Sharp and wife

deeded to Flynn a half interest in the ranch in satisfaction of the mortgage, and thereafter Sharp and Flynn operated the ranch jointly and made their returns to the assessor, both as to real and personal property, in the name of "Sharp and Flynn."

Sharp died testate in 1903. By will he reserved to his wife a life estate in all real and personal property of which he died seised, and provided that, upon her death, one-half his property should go to his son and the other half to the four daughters, share and share alike, but advised that his son should keep the property intact by paying the money value of the four shares to the other heirs; the son was then, however, but fourteen years of age. The will was admitted to probate, and Jacob Titman, named in the will to so act, was appointed executor and duly qualified. Shortly thereafter the four daughters and Flynn met at the Thompson ranch, and, with the consent of the widow, but without consulting the minor heir, agreed that Flynn should for an indefinite period continue to conduct the farming and livestock business as theretofore. This consent on the part of the heirs was never revoked. Flynn ran the business up to 1929 and made his returns to the assessor, as theretofore, in the name of "Sharp and Flynn," but testified that from 1903 on this name had reference to himself and Mary F. Sharp. Titman acted as executor of the Sharp estate until 1918, when he died; no successor was then appointed. Mary F. Sharp died in 1929, and shortly thereafter these plaintiffs were appointed to administer on the Anthony M. Sharp estate.

Mrs. Thompson secured an order of court authorizing her to bring this action and to join her coadministrator as plaintiff. Sharp opposed bringing the action, and filed therein his statement to that effect. The theory of the plaintiff Thompson, as disclosed by the allegations of the complaint, is that from 1897 to 1903 Sharp and Flynn were partners, and that this relationship was continued in effect by the agreement of the heirs with the surviving partner. It is alleged that "from and after the death of Anthony M. Sharp * * * Flynn has continued to conduct said business as surviving partner," and that such

payments as he made to the widow were "a part of the one-half of the income of said partnership business," but that such payments amounted to less than one-half of the Sharp share in such income. It is further alleged that the true condition of the business, the total property on hand, the credits and liabilities of the partnership at the present time are matters peculiarly within the knowledge of the defendant "as the surviving partner" of the firm of Sharp & Flynn.

The answer denies that Flynn was ever a partner of Sharp, and alleges that they were merely joint owners of the real estate, but that all personal property thereon, except certain cattle which Flynn had purchased, belonged to Sharp alone, and that, after the transfer of the half interest in the ranch, Sharp continued the business as theretofore; he (Flynn) merely assisting therein. It is alleged that all of the property of the estate was delivered to Titman, executor, in 1903, and that, after administering on the estate in so far as it was possible, the executor turned the remainder of the property over to the widow in 1909. It is then alleged that Mary F. Sharp, as the life tenant, during her lifetime had possession and control of all of the property of the estate and "operated her interests in said farm," and that the plaintiffs now have in their possession and under their control all of the property remaining in the estate of Anthony M. Sharp, deceased. As an affirmative defense, the defendant alleges that this action is barred by certain designated sections of the Code. The affirmative allegations of the answer are denied by reply filed.

The court, having heard the testimony, found all issues presented by the complaint in favor of the plaintiffs, but then found that "this action is barred by the provisions of subdivision 2 of section 9028, and subdivision 1 of section 9030, and subdivision 3 of section 9031 and section 9041 of the Revised Codes of Montana of 1921." The court further found that in equity and good conscience the plaintiffs should not be allowed to proceed with the action, and it should be dismissed for laches, as the interested heirs had resided in the vicinity since the death of Sharp in 1903 and since the death of Titman in 1918,

and knew at all times of the unsettled condition of the partnership business, but took no steps to compel action as to the partnership business of the administration during Titman's lifetime, nor to have an administrator appointed in his stead on his death. These findings were followed by appropriate conclusions of law, if the findings are justified, and by a judgment of dismissal of the action and for costs.

The plaintiffs here contend that the court erred in making these final findings against them and in entering judgment of dismissal. Conceding that the court's findings would be correct were it not for the family agreement of 1903, they urge that the agreement barred a right of action by the four sisters during the lifetime of the widow, during which period they were in no position to demand an accounting without repudiating the agreement, and therefore no demand for an accounting could be made until after the death of the widow in 1929; no cause of action theretofore existed, and the statute of limitations did not begin to run; nor could laches be imputed to them.

The formation of a partnership depends upon the consent of ▮▮▮▮▮ the parties thereto. (Sec. 7982, Rev. Codes 1921.) Every partnership must be, in its beginning, voluntary and the result and will of the parties; hence whatever may be the rights of a partner of disposing of his share of the firm's property or profits, his character or relation of partner cannot be assigned, or otherwise disposed of, by his independent act; "so if a partner bequeaths his interest in a firm to some one, this will not make the legatee a partner." (Parsons on Partnership, 4th ed., sec. 106.) The death of a member of such a firm dissolves the partnership (sec. 8009, Rev. Codes 1921); it can no more be "continued" by agreement than can the life of the partner. But a partnership, after the death of a member of the firm, has a limited existence for the purpose of closing up its affairs; the surviving partner has exclusive control of the property for the purpose of settling up the partnership business. (*Mares* v. *Mares*, 60 Mont. 36, 199 Pac. 267; *First Nat. Bank* v. *Silver*, 45 Mont. 231, 122 Pac. 584; *White* v. *Prahl*, 94 Mont. 345, 22 Pac. (2d) 315.) Title to the property does

not devolve upon either the heirs nor the personal representative of the deceased partner, but remains in the surviving partner until the partnership business is settled up, when it becomes the duty of such survivor to account to the personal representative for, and turn over to the estate, the balance due. (Sec. 10261, Rev. Codes 1921.)

When a surviving partner fails to perform this duty to render an account, the personal representative, and not the heirs, should sue for an accounting; the latter have no standing in court in such a suit. (*Magee* v. *Magee,* 233 Mass. 341, 123 N. E. 673; *Cotton* v. *Stevens,* 82 N. H. 105, 129 Atl. 873.) That this is so in this state is clearly indicated by the provision of section 10261 above, that the court will require an accounting "upon the application of the executor or administrator" of the estate of the deceased partner.

It is therefore apparent here that, had there been no agreement that the business should be continued as theretofore, it would have been the duty of Titman, the executor, to apply to the court for an order compelling Flynn to render an accounting to the estate after the lapse of a reasonable time for the settling of the partnership affairs; delay and laches then would be attributable to the executor. Of course, the parties interested should see that their personal representative performs his duty to the estate, to the end that they lose none of their rights, but who were the parties interested in the instant case?

As a life tenant, the widow, after the settlement of the partnership affairs and the debts of the deceased, with the costs of administration, was entitled to the possession of the real estate and the remainder of the personal property, with the rents, issues and profits therefrom, in the absence of the agreement that the business should be continued as theretofore. This included accretions in the amount of farm machinery and the like, and increase of livestock. (17 R. C. L. 633; note, L. R. A. 1915C, 847.) On the death of the widow, therefore, the accumulation of profits and increase in personal property would become a part of her estate and not that of her deceased husband, and these plaintiffs would, under no circumstances, be entitled to an accounting with reference to them.

The heirs were interested, originally, in seeing that the property of Anthony M. Sharp was duly inventoried in his estate and that it went to the life tenant, so that on her death, so much as still existed at that time would be returned to the estate of their father and distributed to them, and further that the debts of the original estate were paid.

It is evident from the record that all of the property which plaintiffs now claim belonged to the Anthony M. Sharp estate, was duly inventoried and appraised therein, and that all debts of the estate, if there were any, were paid, and that, either by formal or informal procedure, all of such property passed to the life tenant.

The question as to whether or not the interests of the remaindermen were protected as against the danger of loss or waste by the life tenant is not before us; various methods of securing such protection have been devised. When personal property goes into a life estate, it is evident that the interest of the remainderman stands in a precarious position; it has been held that such property should be sold and the life tenant have but the use of the money, without interest, but, in the absence of a showing of danger of loss or waste, all that is generally held necessary is that the property be inventoried and that the life tenant acknowledge that it is held for life only with title in the remainderman. (17 R. C. L. 627.)

Here, all parties in interest, with the exception of the minor heir, got together and agreed that the firm property be held intact and the business continued as theretofore. This they undoubtedly had a right to do. (47 C. J., pp. 1070, 1071, and cases cited.) Agreements within families as to settlement of estates are favored in the law. (11 R. C. L. 29, and cases cited.) As the death of Sharp dissolved the partnership (section 8009, above), the agreement that the business should be continued as theretofore constituted the creation of a new partnership. (47 C. J. 660; 20 R. C. L. 990.) However, the effect is no different from what it would have been had the old partnership been continued; there was no break in the continuity of the operations carried on at the ranch; all matters connected

with the old partnership have long since been closed. The new partnership acquired all of the property of the old, and what that consisted of at the time was well known to all parties concerned; it is listed in the inventory of the estate, the correctness of which no one then challenged or now challenges.

On the facts before us there was no reason why the heirs of Anthony M. Sharp should have taken any action during the lifetime of Jacob Titman, executor, and, as it must be presumed that he did his duty while acting as executor (sec. 10606, subd. 15, Rev. Codes 1921), there was nothing to be done at the time of his death, and, consequently, no reason why an application should have been made for the appointment of an administrator; there was nothing to be done in the estate; it was dormant. It is therefore apparent that at no time during the life of Mary F. Sharp did a cause of action in favor of the heirs of the estate of Anthony M. Sharp arise; the family agreement, never revoked, but acquiesced in by the minor heirs on reaching majority, prevented any such cause of action from arising.

The death of Mary F. Sharp in 1929 dissolved the partnership then existing between her and the defendant, in which, since the death of Anthony M. Sharp, the property of the estate had been employed "as theretofore." The ending of the life estate revived the dormant estate of Anthony M. Sharp, as the remaindermen then acquired a present right to the property. It therefore became the duty of this defendant, as the surviving partner, to settle the partnership affairs within a reasonable time after the death of his mother and to account to the estate of Anthony M. Sharp for the residue of the property, real and personal, of which Anthony M. Sharp died seised, and which had been used in the partnership business throughout the intervening years. Within a reasonable time after the death of Mary F. Sharp, these plaintiffs secured their appointment as administrators, and Mary Etta Thompson, acting for the estate, made demand for an accounting and brought this action.

The court, therefore, erred in holding that the action is barred by any applicable statute of limitations and that these plaintiffs have been guilty of laches.

It is the duty of the defendant to account to the estate for any property now in his hands belonging to the estate of Anthony M. Sharp, so that the will of the testator, in abeyance during the lifetime of his widow, shall now be carried out. It may be difficult to ascertain what property is now in existence, but that difficulty does not obviate the necessity of an accounting. There is, of course, the real estate which stood in the name of Sharp.

The record discloses that at the time of Sharp's death the ▆ firm held a contract to purchase certain other lands on which payments had been made; to the extent of the payments made, or his portion thereof, Sharp had an equity in this land, and, as the balance due was paid by the new partnership and title taken to the land, the estate is entitled to an interest equal to the equity Sharp had in the land.

Considering the nature of the personal property listed in plaintiffs' complaint and the fact that the life tenant was entitled to the income, profits and increase, leaving the remaindermen only the specific articles in their present condition, we apprehend there is little such property to be accounted for.

The judgment is reversed and the cause remanded to the district court of Broadwater county, with direction to make an order in conformity with the provisions of section 10261, Revised Codes, 1921, requiring the defendant to make an accounting of his stewardship.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES ANGSTMAN and ANDERSON concur.

MR. JUSTICE STEWART, being disqualified, takes no part in the foregoing decision.