THOMPSON ET AL., ADMINISTRATORS, RESPONDENTS, *v.* FLYNN, APPELLANT.

(No. 7,528.)

(Submitted May 21, 1936. Decided June 3, 1936.)

[58 Pac. (2d) 769.]

*Mr. E. H. Goodman, Mr. Wellington D. Rankin* and *Mr. Arthur P. Acher,* for Appellant, submitted a brief; *Mr. Goodman* and *Mr. Acher* argued the cause orally.

*Messrs. Kanouse & Schmitz* and *Mr. George Y. Patten,* for Respondents, submitted a brief; *Mr. Fred W. Schmitz* and *Mr. Patten* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The defendant, Claude V. Flynn, has appealed from a judgment entered against him in an accounting suit brought against him by Mary Etta Thompson and Jefferson Sharp, the personal representatives of Anthony M. Sharp, deceased.

Anthony M. Sharp was twice married—by his first wife he had four daughters, of whom Etta Thompson was one; his second wife was a widow, the mother of this defendant; by her he had one son, Jefferson Sharp. Anthony M. Sharp died in September, 1903. For some years prior to his death Sharp and Flynn had been partners in a farming and stock-raising enterprise and owning real estate jointly, and some time prior to the time of Sharp's death the partners had held a 480-acre tract of pasture land under contract, on which contract approximately one-half of the purchase price had been paid; however, the deed to this land was executed a few months prior to Sharp's death and runs to Mary F. Sharp, the wife, and Flynn.

Anthony M. Sharp left a will which provided that his wife, Mary F. Sharp, should have a life estate in all of his property, real and personal, and, on her death, one-half thereof should go to his son, Jefferson Sharp, and one-half, in equal shares, to his four daughters. The will was probated, and the executor named qualified and acted up to 1918, when he died.

After the death of Anthony M. Sharp, the business was continued under the firm name of Sharp & Flynn, but the partnership was thereafter composed of Mary F. Sharp and this defendant.

Mary F. Sharp died in February, 1929, and thereafter these plaintiffs were appointed administratrix and administrator, respectively, with the will annexed. They were not, however, in sympathy—young Sharp sided with his half-brother, Flynn, while Mrs. Thompson was antagonistic to him.

For the year 1929 Flynn, by mutual consent, carried on the business as theretofore and delivered a portion of the proceeds to the estate. In 1930 he sought to lease the estate's interest, but a lease was denied him; yet he continued in the possession of property in which he had a half interest, the remaining half interest being in the estate or heirs of Sharp, Sr. In December, 1930, the suit for an accounting to the estate, as the surviving partner of Anthony M. Sharp, was instituted against Flynn; Jefferson Sharp was forced against his will to become a party plaintiff. Issue was joined by answer, and a trial had on which the trial court held that the action was barred by the statute of limitations, and further that, in equity and good conscience, the proceeding should be dismissed for laches, and entered judgment of dismissal. On appeal to this court, the judgment was reversed and the cause remanded to the district court of Broadwater county, with direction to the court to make an order in conformity with the provisions of section 10261, Revised Codes 1921, requiring the defendant to "make an accounting of his stewardship." (*Thompson* v. *Flynn,* 95 Mont. 484, 27 Pac. (2d) 505, 508.)

The order was made and the accounting filed, covering the period from 1903 to 1934, but, by its rulings on objections, the

court limited the hearing thereon to the period beginning with 1930. On the evidence adduced, the court made findings to the effect that Flynn holds a certain interest in the real estate of the partnership originally existing between him and Anthony M. Sharp, in trust for the heirs of his deceased partner; that he had no lease or other agreement releasing him from accounting, and has not accounted for the use of such interest for the years 1930 to 1934, both inclusive.

The court found that the only property of the estate for which the defendant should account is the interest of the estate in the real property; that the heirs owned a one-half interest in one tract of land, the use of which was of a value of $400 per year, and, as to a second tract, the use was of a value of $150 per year. As to the tract of pasture land on which the partnership originally had a contract, the court found that the interest of the heirs was a one-fourth, and the use of that interest had a value of $25 per year. After deducting an allowance for the amount which Flynn paid as the burial expenses of his mother, which, under Sharp's will, was to be paid by the estate, the court declared Flynn indebted to the Sharp estate in the sum of $2,517.50, with costs of suit, and judgment was entered for $2,538.48.

The notice of appeal from this judgment is on the grounds that the judgment (1) is not supported by the pleadings; (2) is contrary to the evidence; and (3) is contrary to law. These grounds are amplified by specifications of error which raise the questions presented by argument and herein discussed.

In so far as the original pleadings are concerned, they have to do only with the law making a surviving partner a trustee to settle up the affairs of the partnership and thereupon account to the estate for the interest of the deceased in property remaining in his possession. (Sec. 10261, Rev. Codes 1921.) In the former opinion, cited above, we held Flynn to be a surviving partner and that it was his duty to make an accounting. On the retrial, the court found that there were no partnership obligations and that there is no personal property of the partnership in existence. We have therefore only the ques-

tion as to how far the trial court could go, under the pleadings and under the law, in rendering judgment with respect to the real estate described.

The defendant contends that the court had no authority to render the judgment here, for the reason that Flynn and the Sharp heirs are tenants in common of this property and that Flynn took no action to exclude the cotenants from possession thereof.

It is true that "normally" partners become vested with the ▇▇ legal title to partnership realty as tenants in common (20 R. C. L. 850), and that each tenant in common has the right to possession of all of the property (*Le Vasseur* v. *Roullman*, 93 Mont. 552, 20 Pac. (2d) 250), but that right is "as against the whole world, except his co-tenants" (*Hopkins* v. *Noyes*, 4 Mont. 550, 2 Pac. 280, 283). At common law, one tenant in common who occupies all of the property, or more than his proportionate share of the common property, is not liable "because of such occupancy alone to his cotenants either for rent or for use and occupation." (62 C. J. 446.) The reason for this rule was that "each cotenant was entitled to the occupation of the premises. So long as one did not exclude the other, he was free to possess and enjoy as he pleased"; the one who did not choose to exercise his right was deemed to relinquish it to the other. (*Ayotte* v. *Nadeau*, 32 Mont. 498, 81 Pac. 145, 149.) But that rule was modified in England by the Statute of Anne, and in this country, either by recognition of that statute as a part of the common law or by statute or because of general principles of equity, a cotenant receiving more than his share of the rents and profits may be required to account to his cotenant, but such accounting is based on actual receipts rather than the value of the use, unless the cotenant has been ousted or excluded. (62 C. J. 448.)

In *Ayotte* v. *Nadeau*, supra, this court held that the old common-law rule was abrogated in 1865 by a Bannock statute appearing as section 592, Code of Civil Procedure of 1895, under which, "if one co-tenant of a farm * * * should enter into possession of it and enjoy it as his own property, he

can be held accountable by his co-tenant for the mere use and occupation of it.'' This statute was amended in 1899 (sec. 9091, Rev. Codes 1921), and defendant contends that the rule in the *Ayotte Case* was changed by the amendment. In view of the fact that the amendment but added to the statute as construed, leaving the provision construed in its entirety as a part of the law of the state, we doubt the soundness of this contention, but for reasons immediately appearing, we need not here determine the question.

With reference to partnership real estate, pending an accounting with the estate of a deceased partner, the surviving partner's right is something more than that of a tenant in common; he is legally in possession of the whole for the purpose of liquidating the affairs of the partnership, which still has a limited existence for that purpose, and neither the personal representatives nor the heirs of the deceased partner have any right to the use or possession of the property. (20 Cal. Jur. 808; *Minifie* v. *Rowley,* 187 Cal. 481, 202 Pac. 673; *Darrow* v. *Calkins,* 6 App. Div. 28, 39 N. Y. Supp. 527, affirmed 154 N. Y. 503, 49 N. E. 61, 61 Am. St. Rep. 637, 48 A. L. R. 299.) The surviving partner, as such, is entitled to the control and management of the property (*Davidson* v. *Bulkley,* 198 App. Div. 920, 190 N. Y. Supp. 58), and, until the partnership administration is closed, the possession of the real estate is adverse of the heirs, who otherwise are tenants in common with the surviving partner (*Holton* v. *Guinn,* (C. C.) 65 Fed. 450; *Clay* v. *Freeman,* 118 U. S. 97, 6 Sup. Ct. 964, 30 L. Ed. 104; *Way* v. *Stebbins,* 47 Mich. 296, 11 N. W. 166).

Thus it is apparent that no one of the general rules with respect to the rights of tenants in common, whatever they may be, has application during the period the surviving partner is in sole possession of the real estate as trustee for the winding up of the partnership affairs. It is, as a consequence, held that for such period the surviving partner must account to the estate of his deceased partner for the value of the use and occupation of the landed estate of the partnership. (*Smith* v. *Walker,* 38 Cal. 385, 99 Am. Dec. 415.) Where, as

here, the surviving partner continues in possession, thereby excluding the cotenants by virtue of the law, for years after the accounting should have been made, equity and good conscience dictate that this rule be applied.

Defendant contends that he did account to the estate by delivery to Jefferson Sharp, as administrator, each year of a proportion of the hay and grain raised on the property. But this was done by agreement with Sharp, over the objection of his co-representative and without the knowledge of the court, and the decision of the trial court in 1932, affirmed by this court, is that he had not accounted.

Whatever may be the general rule, it is clear that Jefferson ██ Sharp could not effectively bind the estate by his action. (Sec. 10062, Rev. Codes 1921.) However, as Jefferson Sharp, as an heir and a personal representative of Anthony M. Sharp, deceased, consented to Flynn's continuing to operate the ranch property in the manner and on the terms agreed upon for the year 1929, and thereafter received from him a portion of the produce of the property, Flynn need not account to the estate for Jefferson Sharp's proportion of the value of the use of the real property. (*Scott* v. *Tuggle,* 74 Mont. 476, 241 Pac. 229.)

As Jefferson Sharp owns, under the provisions of his father's will, a one-half interest in the property, Flynn need account to the estate for but the one-half of the amount found to be due from him to the estate, and that one-half shall go to the heirs other than Jefferson Sharp, the real parties plaintiff herein.

As there are no debts owing by the estate, according to the record, there is no need to pay in more than sufficient to satisfy the claims of the nonconsenting heirs, except it be for the expense of closing the estate, and, if it appears there will be such expense, then, in addition to the one-half of the value of the use of the premises, Flynn should be compelled to pay into the estate a sufficient amount to cover the one-half of such expense.

With respect to the pasture land, purchased by the partnership on contract during the lifetime of Anthony M.

Sharp and on which one-half of the purchase price had been paid at the time of his death, we held in the former opinion (*Thompson* v. *Flynn,* supra) that the Sharp estate had a one-fourth interest in the land and that Flynn should be required to account therefor, but in that case there was no intimation that, prior to Sharp's death, this land was deeded, not to the partnership, but to this defendant and his mother, Mrs. Sharp. This fact was made to appear on the accounting made, and it further appears from the record in the present proceeding that this land was never inventoried as a part of the estate. Generally speaking, a statement made in an opinion of this court becomes the law of the case on a retrial. This rule is inflexible when the statement is of a principle or rule of law (*Carlson* v. *Northern Pacific Ry. Co.,* 86 Mont. 78, 281 Pac. 913), but is only applicable otherwise ''to the extent that the facts presented to the lower court were before this court on the former appeal.'' (*Walsh* v. *Hoskins,* 53 Mont. 198, 162 Pac. 960, 961.) If, on a retrial, facts are presented which render the statement made in the first opinion inapplicable, that statement is not the law of the case. (*Prefumo* v. *Russell,* 10 Cal. App. 113, 101 Pac. 24; *Millsap* v. *Balfour,* 158 Cal. 711, 112 Pac. 450; *Dyson* v. *Bux,* 92 Kan. 154, 139 Pac. 1159.)

When, therefore, it was made to appear on the retrial that this land did not stand in the name of the partners at the time of the death of Anthony M. Sharp, the trial court should have disregarded the statement made in the former opinion to the effect that Flynn should account to the estate for this land. Had there been partnership debts to be satisfied from the partnership real estate, this land might have been used for that purpose, but, under the circumstances, the land would go to the grantees on the death of Sharp. (*Sherrod* v. *Mayo,* 156 N. C. 144, 72 S. E. 216, Ann. Cas. 1912D, 1205, and note.) The court therefore erred in requiring Flynn to account for the use thereof to the estate. However, as this is but an accounting suit, we go no further than to hold that Flynn need

not account for the $25 per year, fixed by the court as the value of the use of a one-fourth interest in this land.

The cause is remanded to the district court of Broadwater county, with direction to amend the judgment to conform with this opinion, and, as amended, the judgment will be affirmed; each party to pay its own costs.

ASSOCIATE JUSTICES ANDERSON and MORRIS concur.

MR. CHIEF JUSTICE SANDS, being absent, did not hear the argument and takes no part in this opinion.

MR. JUSTICE STEWART, deeming himself disqualified, takes no part in this opinion.