## CLAY *v.* FIELD.

## FREEMAN *v.* CLAY.

## FIELD *v.* CLAY.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF MISSISSIPPI.

Nos. 895, 1085, 1091. Submitted October 27, 1890. — Decided March 2, 1891.

The surviving partner in the management of a plantation in Tennessee which belonged to the deceased partner, retained possession of it after his partner's death, and of the slaves upon it, and continued to operate the plantation in good faith, and for what he thought were the best interests of the estate of the deceased as well as his own. When the war came, the plantation was in the theatre of the conflict, and at its close the slaves became free. *Held,* that, under the circumstances, the surviving partner in a general settlement was not accountable for the value of the slaves, but was accountable for the fair rental value of the property, including that of the slaves while they were slaves.

An action for dower is not exempt from, or excepted out of, the act fixing the jurisdictional amount necessary for an appeal to this court.

If several persons be joined in a suit in equity or admiralty, and have a common and undivided interest, though separable as between themselves, the amount of their joint claim or liability will be the test of jurisdiction; but where their interests are distinct, and they are joined for the sake of convenience only, and because they form a class of parties whose rights or liabilities arose out of the same transaction, or have relation to a common fund or mass of property sought to be administered, such distinct demands or liabilities cannot be aggregated together for the purpose of giving this court jurisdiction by appeal, but each must stand or fall by itself alone.

The words " received on settlement to this date," where there was a partnership account running through years, may refer to a settlement for the year, or a settlement for the whole period of the partnership; and this ambiguity, being a latent one, may be explained by evidence *aliunde.*

IN EQUITY. The case is stated in the opinion.

*Mr. W. L. Nugent* for Mr. and Mrs. Clay.

*Mr. Edward Mayes* for Mrs. Freeman.

*Mr. J. E. McKeighan* and *Mr. Frank Johnston* for Field.

MR. JUSTICE BRADLEY delivered the opinion of the court.

This case was before us in October term, 1885, upon a decree dismissing the bill on demurrer. See *Clay* v. *Freeman*, 118 U. S. 97. We reversed that decree, and remanded the cause with instructions to enter a decree in conformity with the opinion of this court, which was done. After various subsequent proceedings in the court below, a decree was finally made on the 15th of August, 1889, from which both complainants and defendants have appealed. Before adverting to the subsequent proceedings, it will be necessary briefly to review the case as stated in the bill, and as it appeared before us on the former appeal.

In 1855, Christopher I. Field and his brother, David I. Field, purchased a plantation in Bolivar County, Mississippi, called the Content place, for the purpose of working the same in raising cotton and other crops as partners, the arrangement being that David should occupy and manage the plantation and all the affairs of the partnership, and that each should share equally in the profits and losses. In the course of the business, Christopher I. Field, who had a plantation adjoining the Content place, and was a man of large means, made sundry advances to the firm to pay for land purchased and other things required in carrying on the business, for which his brother David executed, on behalf of the firm, several notes or acknowledgments of indebtedness; one dated 23d of December, 1856, payable 1st of January, 1858, for the sum of $7385.31, with six per cent interest from maturity; another dated 20th of March, 1857, for the sum of $5666⅔, to be paid with interest at six per cent from date; a third dated 5th of June, 1858, for the sum of $1100; and a fourth dated 30th of June, 1859, for the sum of $1389.29; in all, $15,541.27.

David I. Field died on the 11th of September, 1859, leaving

his widow, Lucy C. Field, (who afterwards married one C. L. Freeman,) and an infant son, David I. Field, Jr., who are the defendants in this suit. At the time of David I. Field's death his widow was in Kentucky, and did not return to Mississippi.

Of course the care of the plantation and partnership property devolved upon Christopher I. Field, as surviving partner; but soon after the death of David letters of administration upon his estate were taken out by another brother, Ezekiel H. Field, who went into possession of the plantation and continued to carry it on in the place and stead of his deceased brother, for the benefit of the partnership, during the year 1860 and part of the year 1861. He left in the summer of the latter year, when the disturbances occasioned by the civil war rendered it hazardous, if not impracticable, to cultivate the plantation or to secure any crops. It is charged in the bill that the year 1859 was an unprofitable year, in consequence of the overflow of the river, and that during the year 1860 the crop raised was appropriated to keeping up the plantation, ditching and making other improvements, and that the crop of the year of 1861 was destroyed by the soldiers of the Confederate States under military orders. It is also alleged that no part of the crops ever came into the hands of Christopher I. Field, but all the proceeds that were realized were applied to the payment of current expenses and debts of the partnership, other than the debt due to Christopher I. Field, which, it is alleged, has never been paid. During the war Christopher I. Field, to prevent the capture of the slaves by the fleets of the United States descending the river, removed them to the State of Texas, and kept them there until the surrender, but realized nothing from their labor in Texas beyond sufficient to pay for their maintenance and support. After the surrender he had them brought back from Texas at considerable expense, for the purpose of cultivating the plantation again, but most of them, claiming their freedom, abandoned it, and he was obliged to rent the plantation for what he could get, and did rent it for a time to different persons, but never received therefrom any results beyond the expenses incidental thereto. Ezekiel H. Field, after quitting the plan-

tation in 1861, performed no further acts in the administration of the estate, and resigned his position in May, 1866, and some time in that year Christopher I. Field was appointed his successor. Christopher died on the 18th of July, 1867, leaving as his only heir at law the appellant, Pattie A. Field, now Pattie A. Clay by intermarriage with Brutus J. Clay the younger. After the death of Christopher I. Field, and in October, 1867, Brutus J. Clay, the elder, was appointed administrator both of his (Christopher's) estate and of the estate of David I. Field, the plantation being at that time under rent to Martin and Childress. During 1868 it was rented by Brutus J. Clay, the administrator, to one Holloway; and in 1869 to the said Holloway and another person by the name of Clay, but very little rent was collected which was not required to make repairs consequent upon breaks in the levees, etc. In March, 1868, Brutus J. Clay filed his accounts as administrator of Christopher I. Field, in the probate court of Bolivar County, Mississippi, and also commenced proceedings to have the interest of David I. Field in the Content plantation sold for the purpose of paying his half of the promissory notes given by the firm of D. I. Field & Company to Christopher I. Field, before mentioned. These proceedings are stated in the former report of the case, before referred to. The probate court made a decree declaring the estate of D. I. Field insolvent, and authorizing the administrator to sell the lands described in the petition; and accordingly a sale of D. I. Field's half interest in the plantation was made at auction on the 20th of December, 1869, and it was struck off to the appellant, Pattie A. Field, by her attorney or some other person acting in her behalf, (she then being a minor, and ignorant of the matter,) for the sum of $6000, and she received a deed therefor, and a receipt for that amount was given as a credit on the said notes. Pattie A. Field then went into the possession of the property, and remained in possession until the bringing of the present suit, except as to such part as was set off to the widow, Lucy C. Freeman, for her dower, in November, 1879. [The said sale, however, has been held void because of the abolishment of the probate court by the constitution.

adopted on December 1, 1869.] The bill states that the result of the working of the plantation whilst in possession of the plaintiffs from 1870 to the time of the filing of the bill was without profit, and that the complainant, Pattie A. Clay, incurred a loss of $2500 or $3000 by keeping possession of the property and making repairs rendered necessary by the dilapidations arising from the war, the overflowing of the river, and other causes for which she was not responsible. The bill sets forth in detail a large amount of expenditures incurred by the complainant for taxes and other expenses, and for necessary repairs made by her.

In April, 1873, Lucy C. Field, the widow, filed a petition in the chancery court of Bolivar County for her dower in one undivided half of the Content plantation; and in 1875 a decree for allotment of her dower was made, and was affirmed by the Supreme Court of Mississippi in 1876, so far as the affirmation of her right of dower was concerned. In 1879 she further applied to the said chancery court to have her said dower set off to her in severalty, and a decree for that purpose was made and carried into execution, and she has ever since had possession of the portion set off to her. In September, 1880, the said Lucy commenced a suit, in the same court, against the appellant, Pattie A. Clay, and her husband, to recover the rental value of her dower, whilst in possession of the said Pattie. This suit was removed into the Circuit Court of the United States for the Northern District of Mississippi, before the commencement of the present suit, and evidence was taken therein and sundry proceedings were had, and it stood ready for trial when the bill in the present case was filed. In November, 1880, David I. Field, the son and heir of David I. Field, deceased, having attained his majority, brought an action of ejectment in the United States Circuit Court aforesaid against the said Pattie A. Clay and her husband for the undivided half of the Content plantation, also demanding $20,000 for the use and occupation of the premises from and including the year 1870. Pattie A. Clay and her husband filed a plea in said suit, and the action was pending when the present suit was brought. The bill in the present case was

filed for the purpose of enjoining the prosecution of the said two last-mentioned suits, and for the settlement of the partnership accounts of D. I. Field & Company, and payment out of the partnership property remaining, (consisting only of said plantation,) of the amount due to the estate of Christopher I. Field, upon the four notes before mentioned. The complainants offered in the bill to account for all rents and profits received by them, claiming credit for all expenditures, taxes, and repairs made on account of the property, and prayed that the assets of the partnership might be marshalled and sold for such balance as might be found due to the said Pattie as representative of her father's estate.

This bill was demurred to by the defendants, and the court below sustained the demurrer as to so much of the bill as prayed for a settlement of the partnership accounts, but overruled it so far as it related to an account of the rents and profits due either to Lucy C. Freeman, in respect to her dower, or to David I. Field in respect to his undivided half of the plantation; thus in effect turning it into a suit against the complainants instead of a suit by them. Thereupon evidence was taken on the part of Lucy C. Freeman in support of her claim for rents and profits upon her dower. David I. Field, in March, 1884, filed an answer, stating that he had recovered a judgment in his ejectment suit for one undivided half of the plantation, and praying an account of rents and profits for that half, to be taken in the present suit.

At this stage of the proceedings the complainants objected to having the suit proceed for the purpose of merely taking an account of rents and profits against them, and thereupon, on the 6th of March, 1884, the court made the following decree, to wit:

"Pattie A. Clay et al. &#125;
          vs.          &#125;  288.
"Lucy C. Freeman et al. &#125;

"Be it remembered that this day came on to be heard the above entitled cause; and, the parties appearing in open court, by consent the account herein filed by the master is with-

drawn, and the decree of reference hereinbefore rendered is set aside; and counsel for complainants declining to avail himself of the offer of the court to retain the bill for the purpose of stating an account, it is ordered, adjudged and decreed that said bill be, and the same is hereby, dismissed, and that complainants pay the cost, for which let execution issue; and thereupon complainants prayed an appeal to the Supreme Court of the United States, which is granted upon their entering into bond in the penalty of one thousand dollars, with two sureties, conditioned according to law."

The complainants then appealed to this court, and the decree of the Circuit Court was reversed as appears by the report of the case before referred to (118 U. S. 97).

In conformity with the mandate of this court, a decree was made by the court below in June, 1886, ordering, amongst other things, as follows, to wit:

"1. That the demurrers of defendants to complainants' bill heretofore filed be, and the same are hereby, overruled, and that the defendants answer within sixty days as of the present term of the court."

"3. That the defendant, David I. Field, be, and he is hereby, enjoined from the further prosecution of his ejectment suit against complainants and from suing out final process for the enforcement of his judgment for rent therein, but may retain the possession of the lands secured in said ejectment suit, subject to the rights of complainants under the judgment of the said Supreme Court, to be hereafter determined and fixed."

The complainants, then, by leave of the court, filed a supplemental bill, stating as follows, to wit:

"1. After and notwithstanding the filing of the bill in this cause, the defendant, Lucy C. Freeman, prosecuted her suit in this court against your orators for arrearages in rent upon and for her dower interest in the Content plantation as shown in the pleadings, and on the 12th day of June, 1884, after her demurrer and exception to your orator's original bill had been sustained, recovered a final decree against your orator, Pattie A. Clay, for $3092.34 and costs. On the 14th day of June, 1884, on motion, this judgment or decree was reduced to

$2200.15. The same, with the costs in the cause, amounting to $165, your orator well and truly paid, and so performed the said judgment and decree of the said District Court, from which there was no appeal, as by the record of said cause doth appear.

" 2. That said recovery and payment was not according to right and justice, as appears from the opinion of the Supreme Court of the United States on your orator's appeal from the above decree of this court in this cause, and the said Lucy C. Freeman ought in this cause to be ·decreed and adjudged to restore the said sum and costs to your orator or be compelled to accept it as a charge against her in any accounting hereafter to be had in the cause.

" The premises considered, your orators pray as prayed in the original bill, and that the said Lucy C. Freeman be adjudged to restore to them the money so wrongfully secured by her in the said cause, or for general relief."

The defendants, David I. Field and Lucy C. Freeman, then filed separate answers to the bill in the present case, alleging in effect that David I. Field, deceased, was not in debt to the partnership firm at the time of his death, nor the firm to Christopher I. Field; that the latter controlled and managed the property after his brother's death, though nominally in the hands of Ezekiel H. Field as administrator, and that for his neglect to sell the same before the war (which it is alleged he could have done at a great advantage) he was answerable for and should be charged with the whole appraised value of the personal estate of the firm, (which was $33,663,) and such further sum as the evidence might show it to have been worth at the date of David's death, and that the complainants should also be charged with the reasonable rental value of said partnership real estate from the said date down to the date of the accounting. This was the general purport of the defence.

A large amount of evidence was taken in the cause, and in March, 1888, the district judge holding the Circuit Court, upon final hearing, delivered an opinion on the merits of the controversy, (34 Fed. Rep. 375,) and in June following made a decree settling the rights of the parties and the principles upon which an account should be taken between them

The case as developed by the evidence is very different from what it appeared on the mere statements of the bill. By those statements it was to be inferred that E. H. Field, the administrator of David I. Field's estate, in carrying on the plantation in concurrence with the views of Christopher I. Field, acted as an independent representative of the estate, and with a view to its best interests under all the circumstances of the case, and free from any control on the part of said C. I. Field. In such a case, as held by us in *Hoyt* v. *Sprague*, 103 U. S. 613, the representative waived the peculiar rights which he might enforce in regard to the partnership property; and it follows, as a matter of course, that the surviving partner is subject to no such extra liability as he incurs when he continues to use the partnership property in the business without the consent of the representative of the deceased partner. The evidence, however, shows very clearly that Ezekiel H. Field was appointed administrator of the estate of D. I. Field at the instance of C. I. Field, and was altogether governed by him in the management of the estate. In a letter from C. I. Field to David's widow, the said Lucy, dated January 12, 1860, he said : " I have no desire to do anything that will prove an injury to David's estate. I sometimes fear it will take too long to pay the debts from crops with the present force on the place. I had Ezekiel appointed administrator because I was the largest creditor and did not wish to settle with myself. I put him on the place to live, thinking the negroes would be better contented, and would be managed with more ease and less whipping. True, I have the control and management of the whole, but it is done through him. I am well satisfied it was for the best, and shall wish him to remain there, if he will do so, as long as I have any interest in the property. Don't understand me to think that you disapprove of it, for I do not think so." It is apparent from this language that C. I. Field, whose plantation was next adjoining the Content place, and who was, therefore, at hand to see all that was done on the latter, exercised general control over the partnership property after his brother's death, without the sanction of a responsible and

independent representative of his estate. This aspect of the case raises questions with regard to the principle on which the partnership accounts should be adjusted, and the degree of liability of C. I. Field as surviving partner, which were not before us when the case was here formerly.

Then we only decided that the complainants, as representing C. I. Field, were entitled to have an accounting of the partnership estate for the purpose of securing the payment of the amount due to C. I. Field, if anything, out of the partnership property. The court below had decided that they were barred by lapse of time. We held otherwise, on the ground that the complainants and their ancestor, C. I. Field, having been in possession of the property, lapse of time, or the statute of limitations, did not run against them. The question now is as to the principles on which the settlement should be made.

There is no doubt that C. I. Field, after his brother's death, acted in entire good faith and for what he supposed the best interests of the concern, including his brother's interest as well as his own. He did not nor did any one then anticipate the great civil convulsion which soon took place and destroyed the entire value of slave property, and very largely the value of all other property, in the Southern States. The case in this respect was an exceptional one, and it may be a question whether ordinary rules can be strictly applied to it. C. I. Field undoubtedly supposed that it would be more for the interest of his brother's widow and infant child that the plantation should be continued in operation until a good purchaser could be found, than that everything should be immediately sold, which could not have been done without sacrifice; and there is some evidence that the widow and her friends acquiesced in this view of the case, although she asserts that she was anxious for an immediate sale. The general principle of law undoubtedly is, that on the dissolution of the firm by the death of one of the partners, it is the survivor's duty to settle up the partnership affairs within a reasonable time, and pay over to the representatives of the deceased partner the amount due to them; and if he takes the responsibility of continuing

the business of the firm, and using the property of the partnership, he becomes liable for losses that may occur, and it is in the option of the representatives of the deceased partner either to insist upon a division of the profits, which may be made in thus carrying on the business, or upon being paid the amount of the deceased's share in the capital, with lawful interest thereon, after deducting his indebtedness to the firm. (See Lindley on Part., Book III, chap. 10, pages 976 to 1046, 1047, 4th ed.) The application of the rule in this case would, strictly speaking, entitle the representatives of D. I. Field to call for an account of his share in the capital of the concern at the time of his death, with lawful interest. This is what they do demand as regards the personal property, which was appraised at $33,663, one-half of which, with the interest thereon, they claim should be accredited to the estate of D. I. Field. But this personal property consisted almost wholly of the slaves on the plantation; and the court below charged C. I. Field and his estate with the value of their service as long as they continued slaves, as well as with reasonable rent for the real estate during the whole period from the death of D. I. Field, except the years 1863, 1864 and 1865, when the war was flagrant.

Under such anomalous circumstances and such unexpected events, it seems hardly just to visit upon a surviving partner, acting in good faith and with a view to the best interests of all concerned, the strict consequences of the rule. In our view, equity, when called upon to settle the mutual rights of the parties, may very properly mitigate the hardships of the rule, especially when, as in this case, the loss has occurred by public war. The remarks made by this court, through Justice Swayne, in *Tate* v. *Norton*, 94 U. S. 746, 747, (which was the case of an administrator,) are somewhat apposite to the case now before us: "The intestate," said the court, "had been largely engaged in raising cotton. The administrator put himself, as it were, in the place of the deceased. Everything was carried on and conducted as before his death. Payments were made to the widow from time to time, the children were supported and educated, the taxes were paid, crops were raised,

the cotton was sold, and the debts were discharged as fast as the circumstances permitted. . . . The commencement of the war was the beginning of the troubles of the trust. The State was a battlefield. Troops on both sides were there. The slaves were sent to Texas for safety. The mules and other live-stock were swept away by the advancing and receding tides of the conflict. The lands hardly paid the expenses of cultivating them. Finally the slaves as property were stricken out of existence. This involved a loss to the estate, according to the original inventory, of more than $113,000 of the assets. The administrator became wholly unable to pay this debt. The answer avers that, but for the war, he could, by the year 1863, have extinguished this demand also, and have then handed over to the heirs a large and unencumbered estate for distribution among them. The record shows that this was not an over-sanguine calculation. The calamity was unforeseen, and one for which the administrator was not responsible."

Concurring in the views here expressed, we think with the court below that it would be a very hard application of the general rule relating to a dissolution of partnership by the death of one of the partners, to compel C. I. Field or his estate, under the circumstances of this case, to account for the value of those slaves, which in a few months were entirely freed from bondage by operation of law, and no longer articles of property.

Whilst it is true that C. I. Field, after his brother's death, might have sold the slaves and other property on terms which, in the light of subsequent events, would have been greatly to the advantage of his brother's estate, yet it seems clear from the evidence that the reason he did not sell was that no opportunity offered of effecting a sale of the plantation at what he deemed an adequate price. The sale of the slaves without selling the lands would have rendered the latter entirely unproductive and a dead weight in his hands. We think, therefore, with the court below, that C. I. Field, as surviving partner, had some excuse for not selling the slaves until by the progress of events it became too late to sell them at all. But in assuming the responsibility of continuing the business of the partnership, by carrying on the plantation, he became charge-

able with the fair rental value of the property, whether he succeeded in realizing it or not, and took the hazard of such losses as might occasionally occur. We think, therefore, on the whole, that the judge presiding in the court below adopted the proper course in disallowing the claim for the value of the slaves, and charging C. I. Field and his estate with the fair rental value of the property, including that of the slaves as long as they were slaves, and crediting them with the taxes paid and the permanent improvements. He could not do more without making the law an engine of hardship and severity; he could not do less without disregarding its plain principles. An extract from his opinion will more fully show the grounds on which his conclusion was based. After giving a general history of the case and the making of the four notes claimed to be still due and unpaid, he proceeded as follows:

" It is insisted upon the part of the defendants that if these obligations were not paid at the death of D. I. Field they were cancelled by the negligence of C. I. Field, as surviving partner, to sell so much of the personal property, including, if necessary, the slaves, to pay off this indebtedness, which it is insisted should have been done during the year 1860, when such property brought a high price and before its destruction; that this personal property was then of much larger value than the amount due on these obligations and all other indebtedness of the firm. I am satisfied from the proof that this indebtedness did exist against the firm, but not against D. I. Field individually, and that all the attempted proceeding to collect the same against the estate of D. I. Field by a sale of the lands was based upon a mistaken theory and without authority, and are consequently void. Upon the death of D. I. Field the title to all the personal property, including the slaves, belonging to the firm, vested in C. I. Field, as surviving partner, whose duty it was to have sold so much of it within a reasonable time to pay off this and all other indebtedness against the firm. . . . The question is, did C. I. Field by this neglect render himself liable for the loss of this personal property and the value of the slaves as to the interest of defendants therein, or estop himself from setting up the claim here made?

"Considering the relationship of the parties and all the circumstances, it would, perhaps, be inequitable to hold so strict a rule; but I am satisfied that he had no power to continue the operation of the plantation with the firm slaves, mules and other property belonging to the firm, as a continuation of the firm business, during the years 1861, 1862 and 1863, and that he was liable for a reasonable rent for the land and the hire of the slaves, stock and other property used in the cultivation of the plantation during the years 1861 and 1862, to be applied to the payment of these obligations — no other indebtedness is shown now to exist — and that as C. I. Field and his administrator, Brutus J. Clay, and the complainant, since her attempted purchase, has been in the possession of all the lands, with the exception of Mrs. Freeman's dower, since its assignment, the complainant must be charged with a reasonable rent for the lands and the hire of the slaves, mules and other property used in making the crops of 1861 and 1862, and for a reasonable rent of the lands since the 1st of January, 1866, omitting the years 1863, 1864 and 1865; that such rents and those for 1861 and 1862, be credited upon the amount due upon the obligations given to said C. I. Field, with interest up to the 1st of January, 1863, and that the rents accruing commencing with the 1st of January, 1866, with interest for 1866, on the 1st of January, 1867, and so on from year to year up to the present time, the rents and hire to be estimated at what would be a fair and reasonable rent or hire to a solvent tenant for cash, taking the plantation and property as a whole, and crediting the complainant with the amounts paid for taxes and for such improvements as were necessary to rent the lands at a reasonable price; also for the value of such improvements as may have added to the permanent value of the lands — not what they cost, but the value that they permanently may have added to the lands.

"It is insisted that the complainant should be considered as a mortgagee in possession, and only chargeable with the rents actually received.

"I am of opinion that as C. I. Field neglected to sell the personal property when he should have done so, and by which

neglect it was wholly lost to the defendants, the complainant is not entitled to be considered as a mortgagee in possession, and only liable for the rent received. The cause must be referred to a master to take and state an account under the rules stated and report the same to the next term of court. As C. I. Field was chargeable with the rents and hire for 1861 and 1862, he was entitled to the crops for those years; and, being sole owner, the loss, as a matter of course, was his alone."

A decree was made in substantial conformity with this opinion, and an extended inquiry was had before the master for the purpose of ascertaining the rental value of the plantation, stock and slaves during the years 1861 and 1862, and of the plantation and stock from and including the year 1866, no account being taken for the years 1863, 1864 and 1865; and the estate of C. I. Field was charged with the rents thus ascertained, year by year. On the other hand, the said estate was credited with the four notes in question and interest thereon year by year, except for the years 1863, 1864 and 1865; and with the taxes paid on the property, and the expenditures made for improvements that were necessary or which added permanent value to the estate. In August, 1889, the master made his report, showing, as the result of the account, a balance due from the estate of C. I. Field to that of D. I. Field, on the 1st of January, 1889, of $3281.40. He also found $3747.11 due from Lucy C. Freeman to the complainants for the amount which they had paid to her for the rents and profits of her dower, in satisfaction of the judgment obtained by her against them in her suit. Both parties filed exceptions to the report, which were fully discussed before the court below; the result being a readjustment of the amounts due as follows:

Due from complainant to D. I. Field . . . . . $4708 78
Due from Lucy C. Freeman to complainant . . . 2667 28

A decree for these amounts was made accordingly, and the injunction against D. I. Field from proceeding to collect the rents and profits recovered by him in his action of ejectment

was made perpetual, but it was decreed that he be let into possession of the undivided half of the Content plantation. Other proper directions were made in the decree. All the parties appealed, — the complainants and the two defendants, Mrs. Freeman and David I. Field separately.

A question has been raised as to the jurisdiction of this court to entertain the appeal of Mrs. Freeman. The decree against her is only for the sum of $2667.28, but little more than half the amount necessary for an appeal to this court. Her case is a distinct one, and her appeal is a distinct and separate appeal. We do not see how it can be so connected with that of D. I. Field, the other defendant, as to be an incident of his, or ancillary thereto. Her estate of dower was a distinct estate, and she prosecuted her supposed rights thereto in a distinct and separate proceeding. The decree against her is that she refund the amount above named to the complainant from whom she had recovered it in a separate action by way of damages, or rents and profits in dower. Unless the action of dower is exempt from, or excepted out of, the act fixing the jurisdictional amount necessary for an appeal, we have no jurisdiction in this case. We are not aware of any ground on which such an exemption or exception can be placed. It seems to us that the case comes clearly within the principle which has governed the decisions of this court in a large number of cases, in one of the latest of which (*Gibson* v. *Shufeldt,* 122 U. S. 27) the previous cases are reviewed and classified. We refer particularly to the cases of *Henderson* v. *Wadsworth,* 115 U. S. 264; *Stewart* v. *Dunham,* 115 U. S. 61; *Hawley* v. *Fairbanks,* 108 U. S. 543; *Farmers' Loan & Trust Co.* v. *Waterman,* 106 U. S. 265; *Russell* v. *Stansell,* 105 U. S. 303; and *Seaver* v. *Bigelows,* 5 Wall. 208. Many other cases stand in the same category, but they are referred to and commented on in the cases cited. The general principle observed in all is, that if several persons be joined in a suit in equity or admiralty, and have a common and undivided interest, though separable as between themselves, the amount of their joint claim or liability will be the test of jurisdiction; but where their interests are distinct, and they are joined for the sake of con-

venience only, and because they form a class of parties whose rights or liabilities arose out of the same transaction, or have relation to a common fund or mass of property sought to be administered, such distinct demands or liabilities cannot be aggregated together for the purpose of giving this court jurisdiction by appeal, but each must stand or fall by itself alone. The principal cases in which the interest has been deemed common and undivided, and appeals have been sustained, are *Shields* v. *Thomas*, 17 How. 3; *Market Co.* v. *Hoffman*, 101 U. S. 112; *The Connemara*, 103 U. S. 754; *The Mamie*, 105 U. S. 773; *Davies* v. *Corbin*, 112 U. S. 36; *Estes* v. *Gunter*, 121 U. S. 183; and *Handley* v. *Stutz*, 137 U. S. 366. Mrs. Freeman's case does not come within the principle of any of these cases. As before stated, the estate of dower claimed by her was a distinct estate, and she sued for it in a separate proceeding. She and her son are joined in this suit because they claim interests in the same land, namely, D. I. Field's undivided half of the Content plantation, which the complainant seeks to have subjected to the partnership liabilities; but the interests severally claimed by them in said land are entirely distinct and separate from each other. Mrs. Freeman's appeal, therefore, will have to be dismissed.

As we have already expressed our views with regard to the main point involved in the case, and in reference to the general view taken by the court below, it will not need an extended discussion to dispose of the particular questions raised on the exceptions to the master's report, and assigned for error here. It is contended by D. I. Field that the due bill given to C. I. Field on the settlement of June 13, 1859, was a settlement and adjustment of the whole partnership accounts up to that date. We do not think that this is implied from the terms of the note. The most that can be said is that the words, "Received on settlement to this date," are ambiguous, and may refer to a settlement for the year, or a settlement for the whole period of partnership. This ambiguity, being a latent one, is removed by the evidence in the case. Settlements seem to have been made each year. The other notes were given at nearly annual periods previously. The last previous note for

$1100 was given just a year before this; and the one before that a little over another year. The continued possession of the notes by C. I. Field, uncancelled, is presumptive evidence that they had not been paid. Ezekiel H. Field, the brother and administrator of D. I. Field, testified that D. I. Field owed his brother $12,000; that he understood this from both of them. His evidence is a little confused, as he speaks of a single note for that amount; but afterwards he says there were several notes, and that he saw them in his brother C. I. Field's possession, and that they were signed by D. I. Field. C. F. Clay, a nephew, and intimate with the parties, testifies to his understanding that D. I. Field was indebted to his brother, and he had seen the notes in the latter's hands.

On the whole, we are satisfied that the note referred to, namely, that given on the 13th of June, 1859, was not given in settlement of the entire partnership account, but only of the operations of the year immediately preceding. It seems evident to us, from all the evidence on the subject, that at the time of giving the last note (which was only a short time prior to the death of D. I. Field) there was no unsettled matter between the partners except the partnership notes which had been given to C. I. Field.

The next assignment of error made by D. I. Field is that the surviving partner should have been charged with the value of the slaves and personal property, and with the depreciation of the real estate. This point is involved and discussed in the former part of this opinion, and requires no further observation on our part.

The remaining assignment relates to the accounts taken before the master, respecting which D. I. Field complains (1st) that the rents were placed by the commissioner at too low a rate for the years 1861 and 1862; (2d) that David I. Field's estate should have credit for $5579 paid by him on the Kirk note; (3d) that the allowance for improvements was much too great. After a careful examination of the evidence on these points, we are satisfied that these exceptions are not well taken, and that, at least, no injustice was done to the estate of D. I. Field.

The complainant, on the other hand, contends that the rents for 1861 and 1862, as allowed by the commissioner, were too high, and that a sufficient amount was not allowed for improvements. The evidence on these points is conflicting, and as to the allowance for improvements we do not see any good reason for questioning the result reached by the commissioner and the court below. But as to the rents charged to C. I. Field for the years 1861 and 1862, it does seem to us that they are somewhat excessive, considering the state of the country at the time. Sheriff Carson testified that during those years the taking care of property, real or personal, was quite equal to its value; and another respectable witness for the complainant says that the arable land was worth five dollars per acre rent in 1861, though the crop was burnt; but that in 1862 and the following years it was worth nothing. Other witnesses say that it was worth ten dollars per acre; but in view of the uncertainty of keeping the crop from being destroyed, and of getting it out to a market, and of the general uncertainty of everything in that time of war, it seems to us that these estimates must be extravagant. The commissioner charged seven dollars per acre rent for the 400 acres of arable land for the year 1861, and three dollars and a half for the year 1862. We think that a rent of five dollars per acre for the year 1861 was at least as much as ought to have been charged. Of course it is a matter that does not admit of certain calculation; but it seems to us clear that the amount charged was too high for that year. This, with the interest for one year, would make a difference of $848 in the amount to be carried to the 1st of January, 1863, and from thence over to the 1st of January, 1866, according to the mode of making up the account; and with interest from thence to the 1st of January, 1889, it would make a difference in the result of $2018.24, being that amount to be deducted from the decree in favor of the defendant D. I. Field, and reducing said decree to the sum of $2690.54.

The complainant excepted to various other matters in the account and has assigned errors upon them here; but from the best consideration we have been able to give to them, we

are not satisfied that any error has been committed, assuming that the account should be made up in conformity with the directions of the decree. If it were necessary to go into a discussion of the different points in detail, we could not do better than to quote the final opinion of the court below in relation thereto. But no useful purpose could be thereby subserved.

> *Our conclusion is that the appeal of Lucy C. Freeman must be dismissed, and that the decree in favor of David I. Field should be reversed and a decree be rendered that the complainant, Pattie A. Clay, pay to said David I. Field the sum of $2690.54, with interest from the first day of January, 1889; and that each party pay his and her own costs on this appeal, except the cost of printing the record, which shall be paid one-half by the appellant, Pattie A. Clay, and one-half by the appellants, Lucy C. Freeman and David I. Field. And the cause is remanded with instructions to modify the decree in conformity with this opinion.*

MR. JUSTICE BROWN, not having been a member of the court when this case was argued, took no part in the decision.