**CENTRAL PAPER CO. v. SOUTHWICK.**
No. 5832.

Circuit Court of Appeals, Sixth Circuit.
March 8, 1932.

Arthur W. Penny, of Muskegon, Mich. (Wallace Foote, of Muskegon, Mich., on the brief), for appellant.

Jay H. Hoag, of Duluth, Minn. (Theo. Hollister, of Duluth, Minn., H. W. Bryant, of Grand Rapids, Mich., Lathers & Hoag, of Duluth, Minn., and Knappen, Uhl, Bryant & Snow, of Grand Rapids, Mich., on the brief), for respondent.

Before HICKS and HICKENLOOPER, Circuit Judges, and HAHN, District Judge.

HAHN, District Judge.

For several years prior to October 22, 1927, appellant Central Paper Company (defendant below) had contracts with Fred W. Roedter, of Duluth, Minn., who agreed to furnish and deliver pulp wood to be used in the manufacture of paper by appellant. On that date appellant entered into a like contract with Roedter for the season 1927–1928. To meet appellant's requirements, Roedter, on December 6, 1927, entered into a contract with De Witt Southwick, of Duluth, Minn., appellee (plaintiff below). This contract provided for the delivery of pulp wood at various stations and sidings of railway companies. Southwick was not a producer, but he in turn entered into contracts with John O. Jacobson, of Chisholm, Minn., Benjamin H. Sherman, of Angora, Minn., and others. The latter and others were producers, and also purchased pulp wood from their neighbors.

The wood was cut during the fall and winter seasons and hauled to the main road sides and railway stations during the winter and spring seasons. To enable the producers to pay their helpers, their wood was scaled and advancements made to them to the extent of 50 (or 60) per cent. of its value. To enable Roedter to make these advancements, appellant's contract provided for advancements to him "during the winter of 1927 and 1928, providing reports by his representative or representatives warrant such advances." The contract also recited that $26,000 of advancements had already been made. The evidence establishes that this amount represented arrearages of previous years.

In the spring of 1928 complaints came to appellant that Roedter was not turning over to producers all of the advancements made to him under his contract. Thereupon on April 6, 1928, with the consent of Roedter, appellant determined to make such advancements direct to producers through its own representative, A. H. Shaughnessy, of Fort William, Ontario. If all of the advancements did not reach the producers, or if they were not paid in full, it was likely that the wood would be incumbered with liens for wages and the final amounts due the producers, and Roedter would be unable to complete deliveries to appellant under his contract.

Thereupon Shaughnessy, Johnson, Riley, and Nadeau, all agents or officials of appellant, appeared upon the scene at various times, although Shaughnessy appears to have been there almost continuously until he became ill late in the fall of 1928, when he was superseded by Johnson.

Appellant claims that the only authority vested in Shaughnessy or in any of its agents was to make advancements based upon a percentage of production; that payment of such advancements was to be made only by checks bearing certain printed indorsements hereinafter set forth, and that the liability for final payments remained with Roedter or Southwick.

As to the assigned claims of Jacobson and Sherman, the controversy below was as to the liability of appellant for the payment of the entire purchase price. Appellee and his assignors claimed that Shaughnessy and appellant's other agents not only had the authority admitted by appellant, but that these agents, and particularly Shaughnessy, with appellant's knowledge, so completely took over and dominated the situation that they had apparent authority to make agreements for the payment of the entire amount due upon the wood delivered to Central Paper Company; and that, having such apparent authority, they advised Southwick, Jacobson, and Sherman that their dealings were direct with the Central Paper Company, and on its behalf agreed that it would pay the entire amount due from Roedter or Southwick for the wood.

The question of the character and extent of the actual and apparent authority of the agents of appellant, particularly Shaughnessy, was by the trial judge submitted to the jury under appropriate instructions and requests to charge on behalf of both parties. The instructions and requests so given were well within the principles announced in the

decisions of this court.[1] Upon this issue the jury found against appellant, and that its agents had authority to make agreements to pay the full purchase price for the wood, and that such agreements were in fact made by these agents.

The view which we take of the case makes it necessary to consider only two of the claimed grounds of error:

1. Did the matter in controversy in this action exceed, exclusive of interest and costs, the sum or value of $3,000?

Plaintiff in the court below offered evidence in support of his individual claim and six assigned claims. Plaintiff's individual claim was made up of the following items:

Balance due for services rendered..$1,563.38
For monies advanced to Jacobson
  and Sherman, and............. 500.00
A claim for damages on account of
  an alleged breach of a contract
  for the purchase of timber prod-
  ucts for appellant during the
  year 1929, in the amount of..... 5,000.00

The six assigned claims were in the amounts following:

Sherman ......................$2,394.47
Jacobson ....................... 950.71
Johnson & Carlson.............. 734.77
Isaacson ...................... 1,120.19
Lamppa ......................... 156.05
Sillanpaa ...................... 887.10

Upon the point of lack of jurisdiction of the court below it is urged that Southwick's claim for damages ($5,000) was not to be considered in the court below in determining the jurisdictional amount because he did not recover, and to a legal certainty had no reasonable expectation of recovering, any amount of damages.[2]

As to the claims assigned to Southwick it is asserted (a) that the claims of Lamppa, Isaacson, Sillanpaa, and Johnson & Carlson were assigned to Southwick for the purpose of collection only, in contravention of the Act of March 3, 1875, section 5, now Judi-

cial Code § 37, 28 USCA § 80; and (b) that each of the assigned claims being less than the required jurisdictional amount the "assignee clause," 28 USCA § 41 (1) prevented the court from entertaining jurisdiction as to them, separately or in aggregation.

These questions of jurisdiction are subject to review here. Teel v. Chesapeake & O. Ry. Co. (C. C. A. 6) 204 F. 918, 919, 47 L. R. A. (N. S.) 21. We consider them in their reverse order.

So far as applicable here 28 USCA § 41 (1) provides: "No district court shall have cognizance of any suit * * * upon any * * * chose in action in favor of any assignee * * * unless such suit might have been prosecuted in such court to recover upon said * * * chose in action if no assignment had been made."

The appellee contends that the only purpose of the "assignee clause" is to prevent creation of diversity of citizenship by assignment, and that it has no application so far as the amount of an assignor's claim is concerned. It may be conceded that a literal reading of the clause would make it applicable to restrict and limit the jurisdiction of the federal courts, both on account of lack of diversity of citizenship and insufficiency in amount of the assigned claim. However, the decisions of the Circuit Courts of Appeals and the District Courts uniformly have been to the contrary.[3]

In Bowden v. Burnham (C. C. A. 8, 1894) 59 F. 752, at page 755, it was said, in referring to the assignee clause:

"The prior acts of congress regulating the jurisdiction of the circuit court contained substantially the same provision, and it has been the uniform holding in the circuits that the clause of the section we have quoted has relation to the citizenship of the assignor, and not to the amount of the note or other chose in action assigned. The essential requirement of this clause of the statute is satisfied when the citizenship of the

---

[1] Swift & Co. v. Detroit Rock Salt Co. (C. C. A.) 233 F. 231, certiorari denied 243 U. S. 635, 37 S. Ct. 399, 61 L. Ed. 940; Stark Electric R. Co. v. McGinty Contracting Co. (C. C. A.) 238 F. 657, 665; Ohio Boulevard Land Corp. v. Greggory (C. C. A.) 46 F.(2d) 263, 265; and see Richmond Guano Co. v. Du Pont de Nemours & Co. (C. C. A. 4) 284 F. 803, 807.

[2] See Barry v. Edmunds, 116 U. S. 550, 561, 6 S. Ct. 501, 29 L. Ed. 729; Globe Refining Co. v. Landa Cotton Oil Co., 190 U. S. 540, 23 S. Ct. 754, 47 L. Ed. 1171; Wetmore v. Rymer, 169 U. S. 115, 18 S. Ct. 293, 42 L. Ed. 682; North American, etc., Co. v. Morrision, 178 U. S. 262, 267, 20 S. Ct. 869, 44 L. Ed. 1061.

[3] The Act of March 3, 1875 (18 Stat. 470), was construed in Hammond v. Cleaveland (C. C. 1885) 23 F. 1. The Act of March 3, 1887 (24 Stat. 552) was construed in Bernheim et al. v. Birnbaum et al. (C. C. 1887) 30 F. 885. The Act of August 13, 1888 (25 Stat. 433) was construed in Chase et al. v. Sheldon Roller-Mills Co. (C. C. 1893) 56 F. 625; Bowden et al. v. Burnham et al. (C. C. A. 8, 1894) 59 F. 752; Bergman v. Inman, Poulsen & Co. (C. C. 1898) 91 F. 293; Davis v. Mills et al. (C. C. 1900) 99 F. 39; and Brigham-Hopkins Co. v. Gross et al. (C. C. 1901) 107 F. 769. And the present act, the Act of March 3, 1911 (36 Stat. 1087), was construed in Kentucky Wagon Mfg. Co. v. Jones & Hopkins Mfg. Co. (C. C. A. 5) 248 F. 272.

assignor is such that he could have maintained a suit against the debtor in the circuit court.

"When the plaintiffs had acquired, in good faith, from citizens of states other than the state of which the defendants were citizens, claims amounting in the aggregate to $2,000, they had a right to sue the defendants on all of such claims in one action in the circuit court, although no one of the claims amounted to $2,000. The requisite amount and the citizenship necessary to confer the jurisdiction are united in the plaintiffs; and the jurisdiction is not affected by the fact that the several assignors of the claims could not have maintained separate suits thereon, because the claim of each was less than $2,000 in amount."

█ The cases uniformly hold that Congress did not intend that the assignee clause should restrict or limit the jurisdiction of the federal courts as to assigned claims upon the ground that such claims were below the jurisdictional amount. The cases also uniformly hold that an assignee of claims below the jurisdictional amount, the same having been assigned absolutely, and the assignors being nonresidents of the state, may aggregate his assigned claims to make up the jurisdictional amount. There is not a discordant note in the decisions.

█ Further, it appears that the present statute embodies the fourth re-enactment of substantially identical language.[4] It is well settled that, where there has been such a uniform construction of a statute by judicial decision, it is presumed that Congress, in re-enacting such legislation after judicial construction, adopted and acquiesced in such judicial construction unless a contrary intent appears, which is not the case here. The Abbotsford, 98 U. S. 440, 25 L. Ed. 168; Kepner v. United States, 195 U. S. 100, 24 S. Ct. 797, 49 L. Ed. 114, 1 Ann. Cas. 655; Hecht v. Malley, 265 U. S. 144, 44 S. Ct. 462, 68 L. Ed. 949; United States v. Mooney, 116 U. S. 104, at page 106, 6 S. Ct. 304, 29 L. Ed. 550; Claflin v. Commonwealth Insurance Co., 110 U. S. 81, 92, 93, 3 S. Ct. 507, 28 L. Ed. 76.[5]

[4] The quoted assignee clause was first enacted as part of the first Judiciary Act, the Act of September 24, 1789 (1 Stat. 73), and was re-enacted by Congress as a part of the Act of March 3, 1875 (13 Stat. 470). It was again re-enacted as a part of the Act of March 3, 1887 (24 Stat. 552), a part of the Act of August 13, 1888 (25 Stat. 433), and the present act is that of March 3, 1911 (36 Stat. 1087).

[5] And the same rule of construction has been applied where the executive branch of the government has construed earlier statutes. Stairs v. Peaslee, 18 How. 521, 15 L. Ed. 474; United States v. G. Falk

As to the Act of March 3, 1875, § 5 (28 USCA § 80), it is in part as follows: "If in any suit commenced in a district court * * * it shall appear to the satisfaction of the said district court, at any time after such suit has been brought * * * that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said district court or that the parties to said suit have been improperly or collusively made * * * either as plaintiffs or defendants, for the purpose of creating a case cognizable * * * under this chapter, the said district court shall proceed no further therein, but shall dismiss the suit," etc.

█ Even before the enactment of the above act, a plaintiff holding the technical legal title, only, under a pretended or simulated assignment, conveyance, or transfer, could not maintain an action in the federal courts, Barney v. Baltimore City, 6 Wall. 280, 288, 18 L. Ed. 825 (1867), and it has been emphasized since the passage of that act that such colorable assignments, conveyances, and transfers are a fraud upon the courts, and that they will not entertain jurisdiction as to them. Coming within this category are assignments of the technical legal titles to claims to plaintiffs for the purpose of permitting them to bring suits in the federal courts for the purpose of collecting the same. This is settled by many authorities. Williams v. Nottawa, 104 U. S. 209, 26 L. Ed. 719; Bernards Township v. Stebbins, 109 U. S. 341, 353, 3 S. Ct. 252, 27 L. Ed. 956; Farmington v. Pillsbury, 114 U. S. 138, 5 S. Ct. 807, 29 L. Ed. 114; Lake County Commissioners v. Dudley, 173 U. S. 243, 250, 19 S. Ct. 398, 43 L. Ed. 684; Waite v. Santa Cruz, 184 U. S. 302, 324, 22 S. Ct. 327, 46 L. Ed. 552; and Woodside v. Beckham, 216 U. S. 117, 30 S. Ct. 367, 54 L. Ed. 408.

█ It is asserted that the claims of Johnson and Carlson ($734.77), Isaacson ($1,120.19), Lamppa ($156.05), and Sillanpaa ($887.10) were assigned to Southwick for the purpose only of enabling him to bring suit upon them and to collect them in this action. Concerning the claim of Johnson & Carlson it appears that Southwick paid no money (except $1) for the assignment, and that he was to pay more only if he collected the money. As to the claim of Isaacson, the latter's own testimony was that he turned the claim over to Southwick for collection,

& Bro., 204 U. S. 143, 27 S. Ct. 191, 51 L. Ed. 411; and see Myles Salt Co. v. Commissioner of Internal Revenue (C. C. A. 5) 49 F.(2d) 232, 233, 234.

and that he was to be paid if Southwick was able to collect it. As to Lamppa, the latter's testimony was that Southwick promised to pay him in full for his wood when he collected it; that perhaps he was to deduct something for his services for making the collection; but nothing had been said as to the exact amount of the fees. As to the claim of Sillanpaa, it appears that Southwick paid the sum of $1 for the technical assignment of the legal title; that it was turned over to him so that the assignor could get something out of the case; and that Sillanpaa would get the rest of the money if Southwick was able to collect it.

This, in summary, is the testimony of the assignors, and the testimony of Southwick is not to the contrary. The effect of his testimony is that he was the holder of the technical legal title to these claims.

We are satisfied that, within the principle of the above decisions, these four assignments to him were colorable only, and that he held the bare legal title, for which he had paid the sum of $1, and that the assignments were made to him for the purpose of creating a case of fictitious jurisdiction, in contravention of the statute. In our opinion the trial court erred in not dismissing these claims without prejudice for want of jurisdiction as to them.

The remaining assigned claims of Sherman ($2,394.47) and Jacobson ($950.71) upon the record (Waite v. Santa Cruz, supra, at page 327 of 184 U. S., 22 S. Ct. 327) appear to have been assigned to Southwick absolutely and in good faith. As to them he was the real party in interest. Under the authorities already cited such assigned claims have the status of original claims for jurisdictional purposes and may be added to Southwick's individual claim to make up the required jurisdictional amount. If these claims are added to Southwick's individual claims, exclusive of his damage claim ($5,000), the necessary jurisdictional amount is exceeded. And, having the status of original claims, such aggregation is permissible under the decision of this court in Yates v. Whyel Coke Co., 221 F. 603.

It is therefore unnecessary to consider further the contentions that the court below lacked jurisdiction.

2. The second ground of alleged error relates to the charge of the court and the admission of evidence in relation to certain printed indorsements upon checks which were delivered as advancements by appellant's agents to Southwick and his assignors, Jacobson and Sherman, and indorsed by them.

When appellant took over the paying of advancements directly to the producers, it provided Shaughnessy with checks with special printed indorsements thereon as follows: "I hereby acknowledge payment from Central Paper Company of Muskegon, Michigan, of the sum of $—— to be credited to Fred W. Roedter on my contract with him for pulp wood for Central Paper Company during the season of 1927–1928, and further acknowledge that there has been advanced to me by said Fred W. Roedter on said contract on said season on pulp wood for Central Paper Company, including the above advance, the sum of $——."

Checks indorsed by the payees and bearing the printed indorsements were offered as a complete defense against Southwick's claim that appellant's agents had agreed to make the final payments due to the payees for the wood.

As evidence against Southwick the strength of the printed indorsements lay in the fact that they were evidence that the paper company was not under contract with the payees, and that it was attempting by these printed indorsements to avoid any inference that it was contracting with them. The weakness of these indorsements lay in the fact that they did not in any way refer to, or purport to deal with, the liability for future or final payments. The acknowledgments made by the payees were not inconsistent with an agreement on the part of the paper company to make the final payments upon the contracts, whether they were Roedter's contracts or Southwick's contracts, just as it had paid the advancements. The making of advancements and final payments would both serve the same purpose of keeping the wood free and clear of liens. While they were, therefore, evidence against the payees upon the issue whether the paper company had agreed to make further payments upon the wood which had been contracted for by Roedter or Southwick, they were not conclusive evidence upon that point.

The court charged the jury that, if appellant had agreed to make payments as claimed, its liability could not be evaded merely by indorsements upon these checks. Later, in elaborating upon the effect of the indorsements, the court charged the jury that the indorsements were not conclusive against the payees, and that, if liability for the payments subsisted, it would not be in any way qualified or limited by the indorsements.

Finally, in that connection, the court said: "These endorsements are, however, proper for your consideration, in connection with all of the other evidence in the case in determining whether or not in fact the Central Paper Company, through its authorized agents, did enter into an agreement whereby they would pay for the pulp wood."

Considering the charge as a whole, the court, we think, gave to the printed indorsements the full force and effect to which they were entitled. Upon the issues they were not conclusive and did not constitute complete defenses against their payees; they were entitled only to consideration with the other evidence in the case upon the question of appellant's ultimate liability.

To meet the probative effect of the printed indorsements, Southwick offered and the court, over appellant's objection, received testimony the purport and effect of which were that appellant's agents stated that the checks with the printed indorsements were being used because no other checks were available; that the printed indorsements were to be meaningless against the payees; and that they were to be of no effect between the parties. It is claimed that the court erred in admitting this testimony.

The court having submitted the case to the jury upon the assumption that the printed indorsements were part and parcel of the transactions between the drawers and payees of the checks, and binding upon the payees, this testimony became unimportant and harmless. Had appellant so requested, the court might have further charged the jury to disregard this testimony.

At or about the time of the closing of the 1927–1928 season, and after somewhat extended discussion with Southwick, appellant delivered to him a further check bearing the following indorsement: "Endorsement of this check acknowledges settlement in full for all amounts due at the completion of pulp wood contract between Fred W. Roedter and payee."

Appellant claimed that, having accepted this check, and having indorsed the same, appellee Southwick settled any claim which he had, and that he had no right to recover in this action.

It is undisputed in the record that Southwick entered into his contract with Roedter at least four months before he entered into any contractual relations with Central Paper Company, and he testified that at Roedter's request he was asked to scale logs, look after shipments, and to look after jobs, services which he claimed he was not obligated to perform under his contract; that his claim against Roedter for these services was greatly in excess of the amount of the above check; that he received the check in full payment only of this claim which he had against Roedter; and that the transaction was so understood and agreed to between him and appellant's representatives at the time the check was delivered to him.

These several contentions were submitted to the jury and they were advised to disallow Southwick's individual claims entirely if they found his contentions to be untrue. The jury found against appellant upon this issue. There was no error in receiving the above evidence and in submitting the contentions of the parties to the jury as the trial court did. Clay v. Field, 138 U. S. 464, 480, 11 S. Ct. 419, 34 L. Ed. 1044.

We conclude that the District Court had jurisdiction, and that there was no error in the rulings of the court or in the charge to the jury, except that, as to the claims of Isaacson ($1,120.19), Lamppa ($156.05), Sillanpaa ($887.10), and Johnson & Carlson ($734.77), the court had no jurisdiction. The causes of action of the declaration setting forth these claims should have been dismissed without prejudice, and, in so far as the judgment entered reflects the totals of these claims ($2,898.11), with interest thereon which, at the rate of 6 per cent. per annum from December 1, 1928, to September 12, 1930, amounts to $313.89, it is excessive. Since the court below held, and we concur, that no recovery could be had upon the $5,000 claim for damages on account of alleged breach of contract, we are of the opinion that the final determination can be expedited by requiring, or permitting a remittitur in the amount of $3,212 from the judgment entered below.

It is therefore ordered that, if the plaintiff below, here appellee, shall file in the District Court a remittitur in the sum of $3,212, and shall cause a certified copy of such remittitur to be transmitted to this court within thirty days of the filing of this opinion, the judgment of the court below shall be modified by denying a right of recovery, without prejudice, upon the claims of Isaacson, Lamppa, Sillanpaa, and Johnson & Carlson, and as modified is affirmed. Failing proof of remittitur as above indicated, the judgment of the District Court will be reversed, and the cause remanded for a new trial.