## GROSVENOR v. GUENTHER et al.

### No. 2404.

District Court, E. D. Michigan, S. D.

Dec. 16, 1941.

Roscoe O. Bonisteel, of Ann Arbor, Mich. (George H. Cary, of Detroit, Mich., of counsel), for plaintiff.

Leo J. Carrigan, of Detroit, Mich., for defendants.

LEDERLE, District Judge.

#### Findings of Fact

1. Oliver Grosvenor, a citizen and resident of Piqua, State of Ohio, brought this suit against Arnold Guenther and Julius Zahn, citizens and residents of this State and District, claiming damages in excess of three thousand dollars arising out of an automobile collision which occurred in Michigan at five o'clock on the afternoon of June 3, 1940.

2. At the time in question defendant Zahn was the owner of a 1938 Chevrolet one and one-half ton steel-body dump truck, which was being driven by defendant Arnold Guenther in a northerly direction on U. S. Highway 23, north of the intersection of Packard Road, Washtenaw County, Michigan. Defendant Guenther had driven the truck west on Packard Road and had brought it to a stop before turning right to go north on U. S. 23.

3. At about the same time plaintiff was driving a 1940 Chevrolet automobile owned by his employer, Eagle Roller Mill Company, of New Ulm, Minnesota, in a northerly direction on U. S. 23, south of defendant's truck.

4. At this time the weather was clear, visibility unimpaired, and the pavement dry.

250

5. On the west side of said U. S. 23, about 300 feet north of Packard Road, two private driveways lead into the premises where defendant Zahn lives. These driveways are about 30 feet apart, the southerly one leading west, and the northerly one leading northwest.

6. Several feet before reaching the first, or southerly, of these private driveways the defendants' truck, travelling 15 to 20 miles per hour, started angling its course to the left for the purpose of turning into the second, or northerly, private driveway.

7. Prior to commencing this left swing defendant Guenther looked into the rear view mirror of the truck, and from this observation concluded that no traffic behind him was sufficiently near to interfere with his making the turn in safety. The only signal he gave of his intention to turn left was the change in the course of the truck. His speed continued about the same until he was in the driveway.

8. Plaintiff testified that when he was about 50 feet north of the intersection of Packard Road and U. S. 23, which would be some 275 feet from the point of impact, he first saw defendant's truck, and that the truck was then 100 feet ahead of him; that it travelled due north on the right, or easterly, half of the highway; that he watched the truck proceed, and particularly observed it in connection with the first of these private driveways to ascertain whether defendant intended to turn left into it; that when plaintiff was some 60 feet behind the truck he thought it had proceeded too far north to make a left turn into this first driveway, and that he then blew his horn and accelerated his speed preparatory to passing the truck; that he was travelling 40 to 45 miles per hour; that he then turned over to the left side of the highway, and that when the front of his car had reached the rear of defendants' truck, the truck suddenly turned left without warning, the rear of the truck striking the right side of his car and dragging it along with the truck into the second (northerly) private driveway, which would be a distance of some 65 feet; that the point of impact was on the left, or west, half of the pavement, some 30 feet south of the first (southerly) private driveway, or 60 feet south of the second, or northerly, private driveway; and that the truck and car came to rest off the pavement in this second driveway, with the truck some feet ahead of plaintiff's car, both vehicles standing upright. Plaintiff also testified that until the instant that defendants' truck suddenly swung left toward his car, the truck proceeded north in a straight line on the right half of the highway, without change in its course. Plaintiff offered no explanation as to what challenged his attention and caused his original apprehension that this unknown truck proceeding along a highway, which he said was travelling in a straight line on the right side of the roadway without any change in its course, was about to turn left into one of these two private driveways, when plaintiff at that time had no knowledge that the truck had any connection with the premises to which this private driveway led.

9. Plaintiff testified that he sounded his horn before attempting to pass the truck, when he was 60 feet behind the truck. Defendant Guenther and a witness sitting in the doorway of a nearby gasoline station did not hear a horn. On this issue I find as a fact that no signal was given of his intention to pass on the left.

10. The main external evidence of plaintiff's injuries received in this collision was the bruising of his entire right side. Plaintiff introduced in evidence pictures of his automobile taken after the collision. The damage there shown was mainly in the vicinity of the right door panel. The front of the car, including the front part of the right fender, was practically unscathed. The steel box of the truck extended some 5 feet behind the rear axle, that is, 3 feet beyond the rear tires. The evidences of collision shown on the truck were paint from plaintiff's car on the left rear of the truck's steel box and some cuts and paint on the left rear outer tire and wheel. The squeal of brakes was heard by neighbors, and there were skid marks on the left, or westerly, side of the pavement leading to plaintiff's car at the point of impact for a distance of over 100 feet.

11. From the evidence before me, I must, and do, find that the accident did not happen as plaintiff testified it did, and that plaintiff saw, or should have seen, defendant's truck slowly angling to the left preparatory to making a left turn in sufficient time to have warned a reasonable man that he could not pass to the left in safety; that notwithstanding this warning, plaintiff proceeded ahead on the left side of the

highway without warning to defendant until too late; that, as plaintiff's car reached defendant's truck, the truck was proceeding into the northerly driveway, and plaintiff swung his car left, striking the left rear of the truck with the right side of his car; that the point of impact was in the gravel to the left of the pavement, when the truck had practically completed this turn into the driveway; that the truck driver did not see or have any warning of the proximity of plaintiff's car until the collision had practically occurred.

12. The proximate cause of this collision was plaintiff's attempt to pass to the left of this truck without warning after plaintiff knew or should have known that this could not be accomplished in safety in view of the position and course of defendants' truck, and when there had been sufficient time after plaintiff should have apprehended the danger for him to have avoided the collision, and this conduct of plaintiff constituted negligence.

13. In addition to plaintiff's claims for personal injuries and his damages resulting therefrom, plaintiff's complaint alleged damages of $400 to the automobile of his employer, Eagle Roller Mill Company, and in this connection he introduced in evidence a $345.04 automobile repair bill paid by his employer. There was also offered in evidence on behalf of plaintiff an instrument dated December 19, 1940, from his employer to plaintiff, "assigning any and all sums of money now due or owing to it, and all claims, demands, and causes of action of whatsoever kind or nature which it has had, or now has, or may have against Julius Zahn and Arnold Guenther" arising out of the collision in question. Plaintiff had given no consideration for this assignment and had not seen it prior to its introduction in evidence at the trial. Plaintiff and his counsel conceded that it was an assignment for collection only, that any recovery of damages for which plaintiff's employer had a separate cause of action arising out of this collision would be turned over to plaintiff's employer forthwith, and that the purpose of the instrument was to attempt to confer jurisdiction on this court over this $350 claim. On this record plaintiff's employer's claim for damages consti-

tuted a separate cause of action less in amount than $3,000.

14. The instrument purportedly assigning to plaintiff his employer's claim for damages resulting from this collision was not actual and genuine, but was colorable and fictitious only, and made in an attempt to bring within the jurisdiction of this court a $350 claim of a citizen of another state, which the claimant concededly could not litigate here himself because it was below the statutory minimum.

## Conclusions of Law

■ 1. As to plaintiff's claims for damages arising out of his personal injuries received in this accident, this was a suit claiming damages in excess of $3,000 between a citizen of one state and two citizens of another state, over which this court has jurisdiction. 28 U.S.C.A. § 41(1).

■ 2. Plaintiff was guilty of negligence which proximately caused the happening of this collision, and in this state such negligence bars recovery. Sec. 14, of Act 318, Mich.Public Acts for 1939; McLaughlin v. Curry, 242 Mich. 228, 218 N.W. 698; Bugbee v. Fowle, 277 Mich. 485, 269 N.W. 570.

■ 3. A claimant owning a separate claim of less than $3,000 cannot circumvent the jurisdictional limitation of this court by a colorable and fictitious instrument of assignment to a plaintiff owning a claim in excess of $3,000, for the purpose of joining in suit, even though the claims arise out of the same alleged tort. Barney v. Baltimore, 6 Wall. 280, 18 L.Ed. 825; Central Paper Co. v. Southwick, 6 Cir., 56 F. 2d 593; Allen v. Clark, D.C., 22 F.Supp. 898.

A judgment shall be entered in favor of defendants, dismissing, as outside the jurisdiction of this court, the claim of Eagle Roller Mills Co., presented by plaintiff herein, and adjudging that plaintiff has not proved a cause of action against defendants in connection with plaintiff's alleged personal injuries and damages arising therefrom, and plaintiff shall consequently recover nothing on his claim in this action, and costs may be taxed against plaintiff, for which execution may issue.